MILTON M. WILLIAMS v. LITTLE FALLS WATER POWER COMPANY.[1]

July 20, 1906.

Nos. 14,792—(174).

**Corporation—Salary of Officer.**
> Evidence considered, and *held* that it was sufficient to take the case to the jury upon the issue whether the defendant promised to pay the plaintiff a salary of $3,500 per year for his services as its president.

Action in the district court for Morrison county to recover $7,534.71, salary for services rendered by plaintiff as president of defendant corporation. The case was tried before Searle, J., who granted a motion to dismiss the action upon the close of plaintiff's testimony. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*E. A. Kling, Davis, Kellogg & Severance, Robert E. Olds,* and *R. L. Kennedy,* for appellant.

*Lindbergh & Blanchard* and *Stewart & Brower,* for respondent.

PER CURIAM.

The plaintiff brought this action to recover his salary as president of the defendant, a corporation organized under the laws of this state. The trial court at the close of the plaintiff's case, dismissed the action, and he appealed from an order denying his motion for a new trial.

The complaint alleged that between October 3, 1901, and November 28, 1903, the plaintiff was the president of defendant; that between such dates the plaintiff, under and by virtue of an agreement duly made with the defendant, performed services for it for which it promised to pay him the sum of $3,500 per year; and that the reasonable value of

1 Reported in 108 N. W. 289.

such services was the sum of $7,534.71. The answer admitted that the plaintiff was the president of the defendant corporation, put in issue the other allegations of the complaint, and alleged that all services performed by the plaintiff for the defendant for which compensation was claimed, were rendered gratuitously, and without expectation by either party that the plaintiff would be paid anything therefor by the defendant.

The plaintiff offered no evidence tending to show the reasonable value of his services, and elected to stand on the alleged promise to pay therefor $3,500 per year. The evidence on his behalf tended to show that he served the defendant as its president from December, 1894, to November 28, 1903, having been elected as such president annually by its board of directors; that he had charge of its financial operations during all that time as its general manager, and had charge of its physical operations except of its electrical business; that it was the duty of the board of directors to exercise general supervision and control over the affairs of the corporation, and to elect and to remove all officers and employees; that the plaintiff was paid an annual salary for his services each year down to October 3, 1901; that at a meeting of the board on October 1, 1895, after plaintiff's election as president, the following resolution was adopted:

> Resolved that the salary of M. M. Williams was declared to be $3,500 per year.

That no further action was taken by the board anent his salary until October 3, 1899, when he was re-elected as president and the following motion was adopted, namely:

> On motion, duly seconded, the salary of M. M. Williams, president, was continued at the same rate as in the past, viz., $3,500 per year.

That he was re-elected president at the annual meeting of the board October 2, 1900, and at this meeting the board adopted this motion:

> On motion, duly seconded, the salary of M. M. Williams, president, was continued at the same rate as in the past, viz., $3,500 per year.

And, further, that no other action of the board as to his salary was taken, and that he has not been paid any salary since October 3, 1901.

The record then presents for our determination this question: If the evidence had been submitted to the jury would it have been suffi- cient to sustain a finding by them that the defendant promised to pay the plaintiff $3,500 per year for his services after October 3, 1901? The question is, not whether the jury would have been bound so to find, but it is whether they might have so found from the evidence.

A majority of the court (START, C. J., and BROWN, J., dissent- ing) are of the opinion that the evidence uncontradicted and unexplain- ed was sufficient to sustain a finding that the defendant by its board of directors promised to pay the plaintiff $3,500 per year for his serv- ices after October 3, 1901. It is reasonably clear that the first action of the board as to the plaintiff's salary, when construed in connection with the conduct of the parties in reference to it, fixed his salary not simply for the term for which he was elected president, but until the board otherwise ordered. The language of the first resolution is pe- culiar and reasonably susceptible of different constructions. The sal- ary of the plaintiff "was declared to be [that is fixed at] $3,500 per. year," and for the next four years he was paid such salary each year without further action by the board. If no further action had been taken after the lapse of the four years there would be no difficulty in concluding that the plaintiff had prima facie established a promise to pay him a salary of $3,500 per year for the full period of his service. But in the years 1899 and 1900 the board did take further action.

It was the view of the trial court that the last action of the board must be construed as fixing the plaintiff's salary only for the year for which he had just then been elected president, and such is the claim of respondent.

The motions or resolutions adopted by the board in 1899 and 1900, however, must be read in connection with the first resolution declaring the plaintiff's salary to be $3,500 per annum, and the practical con- struction given to it by the conduct of the respective parties. So read- ing them they fairly may be construed as continuing the plaintiff's sal- ary for the future at the same rate as in the past, viz., $3,500 per year. If it had been the intention of the board simply to fix the salary for the current year it is fair to assume that business men would have so

said instead of continuing the salary as in the past. The omission of the board to take any action as to the plaintiff's salary in 1901 and 1902 has the same, and no other, significance as has its omission to take such action for four years after the first resolution was adopted, and it may be construed, in the absence of evidence to the contrary, as a tacit recognition of the fact that the salary had been fixed at $3,500 per year to continue until the board otherwise directed. We hold that the evidence was sufficient to take the case to the jury on the issue as to whether the defendant promised to pay the plaintiff for his services here in question $3,500 per year.

It is urged by the defendant that the board of directors were not authorized to fix the salary of the plaintiff. The services rendered by the plaintiff were not simply such as pertained to his office of director or president, but were outside and beyond his duties as such officer. We are of the opinion that the board of directors were authorized to fix the salary of the plaintiff for his services to the corporation. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854.

Order reversed and new trial granted.