ERNEST J. SEITZ v. UNION BRASS & METAL MANUFACTURING COMPANY AND OTHERS.[1]

June 30, 1922.

No. 22,951.

Duty of directors toward minority stockholder in matter of dividends— when at his suit court will direct payment of dividend.

1. Directors and officers of a corporation owe stockholders the active duty of honesty and good faith in the transaction of the business of the corporation and in their dealings with it. If earnings are made from which dividends should be paid they will not be permitted to carry them into surplus so as to prevent a minority stockholder from sharing corporate gains or so as to depress his stock; and in the event of their so doing a court of equity at the suit of a minority stockholder will direct the payment of a dividend. The court did not err in refusing to order a larger special dividend than 10 per cent.

Burden of proof on plaintiff to prove salaries of officers are excessive— restoration compelled.

2. The board of directors voted salaries to the officers before the performance of their services. The by-laws authorized the board to

[1]Reported in 189 N. W. 586.

fix compensation. No officer participated in the fixing of his compensation, nor was his presence necessary to constitute a quorum of the board. If a board allows unreasonable and excessive salaries so as to absorb earnings which should go in dividends or remain with the company as surplus, a court of equity at the suit of a minority stockholder will compel restoration. A court will not lightly interfere with the judgment of the board, and the plaintiff in such an action, as commonly in other cases, has the burden of proving his case, including his claim that the salaries fixed are unreasonable and excessive.

### Findings as to salaries construed.

3. The findings of the trial court do not bear the construction that a recovery can be had by a minority stockholder only upon a finding of actual fraud, or a construction that the salaries paid were unreasonable and excessive. In its original findings the court said nothing about the amount of the salaries. In its amended findings it found that the "salaries paid to said officers and managing heads of said corporation are not so unreasonable and excessive under the circumstances as to be deemed fraudulent and requiring restoration thereof, or any part of the same, to the corporate treasurer." It denied findings requested by the plaintiff to the effect that the salaries paid were "unreasonable and excessive." The findings are construed as holding that the salaries paid were not under the circumstances unreasonable or excessive.

### Decision sustained by evidence.

4. The finding that the salaries were not unreasonable or excessive is sustained by the evidence.

Action in the district court for Ramsey county for an accounting; and for the appointment of a receiver to compel defendants to pay over to the company all profits or income received by them by way of investment, profit, income or otherwise, and to disallow any compensation to Theodore Michel for his services as managing director or president and that he should pay interest on all funds or property diverted. The case was tried before Haupt, J., who made findings and as conclusion of law ordered that plaintiff be decreed to be the owner of 466 shares of the capital stock of the corporation and that the company out of its surplus held in government bonds pay a

special dividend of ten per cent on its capital stock. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*H. E. Fryberger* and *O'Brien, Stone, Horn & Stringer*, for appellant.

*O. E. Holman*, for respondent.

DIBELL, J.

This is an action by the plaintiff, a minority stockholder, to compel the defendant corporation to declare a dividend and to compel certain officers to pay into the corporate treasury money alleged to have been wrongfully paid and received as excessive salaries. There were findings requiring the corporation to declare a special dividend of 10 per cent, but refusing to compel the individual defendants to restore salaries received. The plaintiff appeals from the order denying his motion for a new trial.

The trouble between the plaintiff and the defendant Theodore Michel, or between the plaintiff and the corporations in which the two were interested, is of some years' standing. Its history, so far as shown by prior litigation reaching this court, is preserved in Seitz v. Michel, 141 Minn. 244, 170 N. W. 197; Seitz v. Michel, 148 Minn. 80, 181 N. W. 102, 12 A. L. R. 1060; Seitz v. Michel, 148 Minn. 474, 181 N. W. 106; Seitz v. Frey, supra, page 170. With the case now under consideration is decided Seitz v. Elite Laundry Co. infra, page 469.

The two ultimate questions presented are whether the court should have required the payment of a dividend larger than 10 per cent and whether it should have required the restoration of salaries to the corporate treasury.

1. Corporate officers owe the corporation and its stockholders the active duty of honesty and good faith. This court has continually insisted upon the recognition of the fiduciary relation between officers and directors and stockholders and has been active in protecting in a proper case the interests of minority holders against the oppression of the majority. Tasler v. Peerless Tire Co. 144 Minn. 150, 174 N. W. 731; Lake Harriet State Bank v. Venie, 138 Minn. 339, 165 N. W. 225; and cases cited; Green v. National A. & A. Co. 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784; Minnesota L. & T.

Co. v. Peteler Car Co. 132 Minn. 277, 156 N. W. 255; Ekberg v. Swedish-American Pub. Co. 114 Minn. 196, 130 N. W. 1029; Williams v. Little Falls W. P. Co. 99 Minn. 4, 108 N. W. 289; Jones v. Morrison, 31 Minn. 140, 16 N. W. 854. The directors may not exclude a minority from participation in profits which should be distributed. If earnings are made from which dividends should be paid, and they are carried into surplus for the purpose of preventing a participation in profits, and to depress stock values, a court of equity will in a proper case require their application at the suit of a minority stockholder. Anderson v. W. J. Dyer & Bro. 94 Minn. 30, 101 N. W. 1061. The court found facts justifying interference and directed the payment of a special dividend of 10 per cent. This was additional to the 6 per cent dividend paid from 1917. The defendants acquiesce. The plaintiff claims that it should have been larger. We sustain the trial court's view.

The years of 1919 and 1920 were years of abnormal profits. They could not be expected to continue and ought not to continue. The findings were made on May 27, 1921. The court might well conclude that though the accumulated surplus stood at $78,000 in 1919, and at $107,000 in 1920, the situation was such that conservative management required the keeping of an ample surplus. Profits for 1921 were not assured. The company had in its surplus $24,800 in liberty bonds. They were pledged as security for a note of $49,840 borrowed from a bank with which to purchase copper. Out of these bonds, which in due course of business would be released from the pledge in July, the court directed the dividend on the issued stock of $189,100 to be paid. There was still left a large surplus. In view of the uncertainty of business conditions in 1921, the consequent uncertainty as to earnings, and the trouble pending with a minority stockholder, quite possibly affecting the credit of the corporation, the court could hold that a no larger dividend should be paid.

2. The articles of incorporation provided for the election of officers by the board of directors. The by-laws provided that the directors, as such, should not have compensation, but for special services might have; and the directors were authorized to appoint

and remove all appointive officers, managers, etc., and fix their compensation. The salaries were regularly voted by the board of directors. No officer participated in the fixing of his salary nor was his presence necessary to constitute a quorum when it was fixed. The voting of the salaries was just as valid in form as any voting of salaries by a board of directors of a closely owned and singly controlled corporation to officers who are directors can be. It was not a voting of salaries to directors or officers as an incident of their offices. It was a voting of salaries for actual work necessary to be done in the conduct of the business.

There is no reason why a corporation may not use the services of its directors and pay for them. Commonly in the case of small corporations like this, where the stock is closely held, the capital is invested with the intent that the majority shall have the responsibility of management, and it would not be invested otherwise; and the intention is that the owner who risks his capital and assumes management shall work out the business project for a number of years and have employment and adequate compensation. He would not invest except upon the condition that he have control and compensation. He would not entrust his money to another, nor would he invest it unless in connection with its use he was getting an opportunity to engage his activities and receive compensation. This is the practical fact commonly met in small corporations.

If the officers, acting as they do in a fiduciary capacity, fix exorbitant and unreasonable salaries so as to absorb earnings which should go in dividends or remain with the company as surplus, they are not exercising the fidelity which the law requires and a court of equity will give relief at the suit of a minority stockholder by compelling restoration. In determining whether salaries are excessive and unreasonable so that there should be a restoration courts proceed with some caution. An intolerable condition might result if the courts should too lightly undertake the fixing of salaries at the suit of dissatisfied stockholders. An issue as to the reasonable value of the services of officers is easily made. It is not intended that courts shall be called upon to make a yearly audit and adjust salaries. The dissenting stockholder should come into court with

proof of wrongdoing or oppression and should have more than a claim based on mere differences of opinion upon the question whether equal services could have been procured for somewhat less. Were it otherwise efficient executives, able to command in competition large salaries, risking their capital on the faith of control and a steady employment, would find themselves and their capital periled by the uncertain view which a court might take. The right of majority control must be given effect and the minority cannot through the courts interfere with an honest and fair majority policy.

Thus in Matthews v. Headley Chocolate Co. 130 Md. 523, 100 Atl. 645, a suit by a corporation to require its officers to account for excessive salaries, the court said [page 535]:

"The court would not be authorized to substitute its judgment for theirs [directors] as to what are proper salaries, provided they acted in good faith within their powers, and the salaries fixed by them were not clearly excessive."

In Fillebrown v. Hayward, 190 Mass. 472, 77 N. E. 45, the court, referring to an allowance of salary to a woman who was treasurer, said [pages 477, 478]:

"But if the amount of compensation compared with her actual duties seems to be unduly large, yet it is stated in these findings that she and the directors acting in good faith regarded the salary as a fair valuation of her services to the company, which during this time was doing a profitable and extensive business. * * * That she was a member of the board, which also included her daughter, would not invalidate its action, for there is no evidence of any purpose to appropriate corporate profits unlawfully under the guise of salary, the abstraction of which would impair either the solvency of the company, or the right of minority stockholders to a reasonable division of surplus earnings in dividends."

In Beha v. Martin, 161 Ky. 838, 171 S. W. 393, where the right of a minority stockholder to relief, where excessive salaries are allowed, is recognized, the court said [page 844]:

"In a case like this, where the compensation is fixed by the board of directors, who also are a majority of the stockholders, it does not

devolve upon the director whose compensation is in question to prove that the compensation is fair; but the objecting stockholder must establish affirmatively that the salary or compensation is unreasonable and oppressive."

We do not stop to review the cases. The holdings are in confusion and not always in accord with the rule we adopt. Sometimes statutes affect the result. Sometimes the question arises when the officer has participated in the fixing of his salary, or when a salary is voted as an incident to an office where no more than ordinary and largely formal duties are performed, or where there is manifest wrongdoing or fraud, and sometimes where the officer seeks recovery in implied assumpsit. We are content to hold, under the facts before us, that the salaries were regularly fixed, and that a dissenting stockholder attacking them has the burden of proving that they are unreasonable and excessive so that a substantial wrong is done him if they are retained.

3. The court said nothing in its original findings about the unreasonableness of the salaries. Its attention was directed to the right of the plaintiff to a dividend and the amount of it. In its memorandum, which can be used only in interpreting or explaining the findings, the court said that the business of the corporation had been capably and honestly conducted; that Theodore Michel was the dominating force; that it was a one-man corporation; that the bonus allowed for 1919 and 1920 made the compensation of Clarence B. Michel beyond what it ordinarily should be; that the amount of bonus was caused by the unprecedented amount and profits of the business; but that fraud was not shown. And in the course of its memorandum the court said this:

"I am forced to the conclusion that the Michels in their administration of the affairs of this corporation exhibit a purpose to unjustly deprive the unsalaried minority stockholders of a fair part of the earnings. This purpose I find manifested in the liberal salaries paid and the accumulation of a large, unnecessary surplus."

The memorandum was directed to a discussion of the question whether a dividend should be ordered and is of course not a finding

upon the issue of excessive or unreasonable salaries.    Upon an application by the plaintiff for amended findings the court found this:

"Said Clarence B. Michel, as assistant manager to said Schmitz, was paid a salary of $2,325 for the year 1918; said Henry J. Kaim, as superintendent of said corporation, was paid the following salaries during the following years, to-wit: 1914, $2,075; 1915, $2,100; 1916, $2,100; 1917, $2,100; 1918, $2,575; 1919, $3,225; 1920, $3,375; and in addition to the salaries so paid said Henry J. Kaim was paid additional salaries based upon a percentage of the net profits of the business and known as bonuses, for the following years in the following amounts, to-wit: 1914, $67.14; 1915, $169.68; 1916, $538.60; 1917, $1,247.41; 1918, $1,997.85; 1919, $2,343.95; 1920, $4,948.53. Each and all of the foregoing salaries and additional salaries or bonuses were fixed by and paid pursuant to resolutions passed by the board of directors of said defendant corporation.    The said salaries paid to said officers and managing heads of said corporation are not so unreasonable and excessive under the circumstances as to be deemed fraudulent and requiring restoration thereof, or any part of the same, to the corporate treasury."

It may be noted here, without further quotation from the findings, that Theodore Michel received a salary of $3,600 for many years. Clarence B. Michel started in 1917 with $1,850 and in 1920 received $2,950.    Kaim received $2,075 in 1914 and $3,575 in 1920.    From 1914 a bonus was given the managing officers, first of 2 per cent and later it was increased to 10 per cent, except that Theodore Michel received no bonus.    The bonus was computed on the net profits after deducting 6 per cent on the capital and surplus.    Kaim and Clarence received the same bonus for the years both worked.

Many findings were requested and denied.    One request was to the effect that the purpose of the two Michels was "to cause said corporation to pay unreasonable and excessive salaries to the managing officers and directors thereof with the intention of distributing a considerable portion of the surplus earnings and profits to such officers and directors as salaries and bonuses and thereby depriving plaintiff of any participation in such surplus earnings."    It was

denied. Others were to the effect that the salaries paid were "unreasonable and excessive." They were denied. The plaintiff claims that the court should have found whether they were unreasonable and excessive by saying directly that they were or were not. The trial court when requested must find one way or the other upon material issues. Turner v. Fryberger, 99 Minn. 236, 108 N. W. 1118, 109 N. W. 229; Orr v. Sutton, 127 Minn. 37, 148 N. W. 1066, Ann. Cas. 1916C, 527; First Nat. Bank v. Towle, 118 Minn. 514, 137 N. W. 291. Here, however, a refusal to find, as requested by the plaintiff, upon whom was the burden of proof, that the salaries were unreasonable and excessive, was equivalent to a finding that they were reasonable. Malchow v. Malchow, 143 Minn. 53, 60, 172 N. W. 915.

The finding that the salaries were not "so unreasonable and excessive under the circumstances as to be deemed fraudulent and requiring restoration thereof, or any part of the same, to the corporate treasury" has given trouble. We take it that the court had in mind the fiduciary relation and the obligations attendant upon it, the obligation resting upon the plaintiff of presenting facts justifying restoration, and it did not intend, as the plaintiff claims, that actual fraud independent of the fiduciary relation must be shown. This conclusion necessarily results if effect is given to the finding that the salaries were not unreasonable or excessive.

4. The salaries with the bonuses added seem large. Aside from the bonus they seem moderate. The bonus was contingent and uncertain. The management was capable, conditions were unusual, and there were large profits. The court so finds. The evidence of competent witnesses sustains a finding that the salaries were not excessive. The net profits of 1919 and 1920 were abnormal. That is what made the bonus large. It is not likely that when business commenced in 1919 and 1920 the company anticipated so large a business and so great profits. It was a time when business ventures for the future were thought risky.

The trial court worked out the difficulties of the parties with fairness. The defendants were told that they must not oppress a minority stockholder by accumulating profits and neglecting to pay dividends and that they might easily be in trouble through taking

too liberal salaries. Majority stockholders, in charge of a corporation, and making it a success, too readily think that it is enough if the minority stockholders get 6 per cent return and that the rest is properly taken as a reward for successful management. The plaintiff was told that majority rule controls and that as a minority stockholder he could not control its policy or too freely complain. It is easy for a minority stockholder to see faults in the management which would not exist were he in control.

Order affirmed.