JOHN D. BARRETT AND ANOTHER v. HASSEL M. SMITH
AND OTHERS.[1]

No. 28,740.

April 8, 1932.

[1]Reported in 242 N. W. 392.

*Junell, Oakley, Driscoll & Fletcher,* for appellants.
*George S. Grimes,* for respondents.

HOLT, J.

This is an appeal by the defendants from a judgment entered against them upon the findings which were before the court in the case of Barrett v. Smith, 183 Minn. 431, 237 N. W. 15. This is a minority stockholders' suit to recover in behalf of the corporation excess salaries paid to defendants as officers, expenditures by defendant Ellison from corporate funds for what are referred to in the record as political contributions, and certain bonuses paid to the defendant Smith. On the three matters mentioned the trial court found in favor of the plaintiffs, and judgment was entered against the defendants therefor. Recovery on the other grounds was sought but relief was denied. Both sides moved for a new trial as well as for amended findings. From the order denying plaintiffs' motion for a new trial they appealed, and the issues which they presented were disposed of by this court in the case cited. The defendants' appeal from the order denying their motion for a new trial was dismissed upon procedural grounds. Barrett v. Smith, 183 Minn. 431, 237 N. W. 15. After the case was remanded

598

to the district court the defendants unsuccessfully sought leave for a renewal of their motion for a new trial. Judgment was entered against them, and they have appealed.

We do not regard the action of the trial court upon the defendants' application for leave to renew their motion for new trial as at all fatal to any of the questions which they seek to review on this appeal. If there had been no motion for a new trial, the defendants might still review the sufficiency of the evidence to support the findings attacked and the sufficiency of the findings of fact to support the conclusions of law, Pittsburgh P. G. Co. v. Brown, 152 Minn. 325, 326, 188 N. W. 569; Cincinnati T. R. Co. v. Lowe, 152 Minn. 374, 188 N. W. 1011; Potvin v. Potvin, 177 Minn. 53, 224 N. W. 461.

Plaintiffs failed of reëlection to the board of directors at the annual stockholders' meeting held in January, 1929. Defendants and their associates then secured control. Smith and Ellison, holding large blocks of stock, saw to it that persons friendly to their interests were elected directors. Immediately following the stockholders' meeting mentioned, the board of directors met and by one resolution increased the salary of Smith as treasurer and general manager from $15,000 to $21,000, Ellison's as president from $4,500 to $7,500, and also increased the salary of the secretary. All these parties whose salaries were thus increased were directors and voted for the resolution. The trial court found this resolution null and void. At least it was prima facie voidable. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854. There is no finding that the board as such passed the resolution in good faith believing it for the best interests of the stockholders.

After this litigation started and in September, 1929, the board of directors met and passed three resolutions ratifying and adopting the salaries attempted to be fixed by the previous January resolution. One of these resolutions pertained to the treasurer and general manager's salary, one to the salary of the president, and one to the salary of the secretary. When each resolution was adopted the official whose salary was involved therein absented

himself from the room wherein the board meeting was held. Had there been a finding sustained by the evidence that these resolutions were adopted in good faith believing them to be for the best interests of the stockholders, the law would declare the resolution of the previous January ratified and validated. Wickersham v. Crittenden, 110 Cal. 332, 42 P. 893. But there is no such finding. The memorandum made a part of the finding speaks of the good faith of Smith and Ellison, but we do not interpret that as ascribing good faith to the actions of the board of directors either in fixing the salaries at the January meeting or in ratifying them at the September meeting. There were many acts of defendants involved in the litigation, some of which were decided in their favor, and we think the memorandum does not go farther than to say that when Smith and Ellison drew their increased salaries they deemed themselves entitled thereto. Nor do we think the facts would justify such finding.

Plaintiffs and their associates held a large proportion of the stock of the defendant corporation, and they had just been ousted from having the share in its management they theretofore had when the board met in January. Appellants Smith and Ellison held and controlled a majority of the stock. The feeling between the two factions was bitter. There can be little doubt that Smith and Ellison, the chief beneficiaries of the salary raise, selected the directors who in September voted to ratify the salary raise of the January meeting. Nor can there be any doubt that in so doing these directors voiced Smith's and Ellison's wishes. The net earnings for 1928 exceeded $100,000, and for that year Smith was paid the salary of $15,000, the largest salary paid him up to that time, and Ellison $4,500. However, during the year 1929 the earnings dropped so that there was a net loss of over $24,000. This, notwithstanding that in September, when the board of directors must have been aware of the fact that the corporation was operating at a loss, the very generous salary of Smith is increased 40 per cent and that of Ellison 60 per cent. As said in Backus v. Finkelstein (D. C.) 23 F. (2d) 531, 537:

"The taking of these high salaries by these defendants was merely a convenient method for absorbing the profits, instead of simply making payment for actual services performed."

Judge Booth in that case also calls attention to the fiduciary relation in which a board of directors of a corporation stands to its minority stockholders, and that salaries paid should be considered in connection with the ability of the corporation to pay.

In Fillebrown v. Hayward, 190 Mass. 472, 77 N. E. 45, cited by appellants, in addition to the finding that the directors had acted in good faith in increasing a salary, was the one that though the salary was somewhat large the corporation's business was profitable and growing. Where, as in the instant case, at the January meeting the board of directors of six members undertook to increase the salaries of three of the six who constituted the chief officers of the corporation, courts have termed the action a fraud upon the stockholders.

In McConnell v. Combination M. & M. Co. 31 Mont. 563, 567, 79 P. 248, 249, it is said of such conduct on the part of directors:

"Their good faith in doing this is altogether immaterial. The law characterizes such action as fraudulent."

In McKey v. Swenson, 232 Mich. 505, 514, 205 N. W. 583, 586, the court holds the fixing of salaries as was done in the case at bar in January, 1929, not voidable but "wholly void," and "required refund thereof or, at least, casts upon the officers the burden of showing the salaries were reasonable or to give the court information upon which reasonable compensation could be fixed." It was there also held that, since the officers receiving the salary held the majority of the stock of the corporation, the action of the directors in fixing such salaries could not be ratified at a stockholders' meeting.

Under the circumstances, the January attempt to increase the salaries was more than voidable. And this is confirmed and good faith negatived by the attempted ratification in September. The members of the board, and certainly the officers concerned, then

knew that the corporation was operating at a loss. Under such circumstances it was close to criminality for the board, dominated by the chief beneficiaries of the action, to attempt to ratify a previous voidable 40 to 60 per cent increase of salaries. The case of Atwater v. Elkhorn Valley C. L. Co. 184 App. Div. 253, 171 N. Y. S. 552 (affirmed in appellate court) is also in point, that where the increase of salary is grossly excessive the court will grant minority stockholders relief despite ratification, it being a constructive fraud upon them to permit the chief officers to absorb the earnings. We conclude the court rightly determined that Smith and Ellison were liable for the salaries drawn in excess of $15,000 and $4,500. In so doing we do not depart from the doctrine that courts do not meddle with the internal government of corporations except to protect the minority stockholders against fraud or oppression practiced by the board of directors or the majority. But if salaries are fixed at an excessive figure for the purpose of preventing minority stockholders from participating in the profits or to depress stock values or otherwise to oppress or defraud such stockholders and violate fiduciary obligations of the directors, equity will interfere. The fact that salaries voted are higher than the court would fix is not enough. However, the salaries may be set at such excessive amount as to evidence fraud and oppression on the minority. The question is fully gone into by this court in Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 464, 189 N. W. 586, 588, 27 A. L. R. 293, where it is said:

"The dissenting stockholder should come into court with proof of wrongdoing or oppression and should have more than a claim based on mere differences of opinion upon the question whether equal services could have been procured for somewhat less."

5 Fletcher, Cyc. Corp. (Perm. ed.) § 2171, p. 494, states that the better view seems to be that the action of directors will not be set aside unless the result is oppression of the minority. But we conclude that under the circumstances disclosed by this record the increase of salaries to the officers owning or controlling the majority stock resulted in unjustifiable oppression and loss to the minor-

ity stockholders. The court directed judgment for the void increase received.

Defendant Ellison made contributions to political parties and candidates with funds which were voted to his expense account with the knowledge of Smith and Mitchell. They candidly admit that they knew the purpose of the appropriation. Plaintiffs deny knowledge. The court found that Ellison alone should repay these contributions, placing its decisions partly on the statutory violation and partly on the fact that other innocent but unnamed stockholders were interested in the result. On the plaintiffs' appeal they earnestly contended that Smith and Mitchell as well as Ellison should be held. We then held because the practice had continued coextensively with plaintiffs' service upon the board of directors from 1921 and 1922 to 1929 that they could not successfully plead ignorance. They were barred from recovery from Smith and Mitchell by acquiescence in a long established practice. It was then said [183 Minn. 442]:

"Accurate and complete knowledge of such things is sometimes avoided. It was available here. When such knowledge is so available, but escaped as plaintiffs insist it was here, responsibility follows as surely as though it had been actually gained."

We might stop here in the theory that our former decision is the law of the case, but we reiterate the principle that directors cannot successfully plead ignorance of a long continued practice and policy which it was their duty as directors to know and to stop or at least to protest against.

That there are other stockholders who may not be barred but who are not parties by name does not permit a recovery. 6 Fletcher, Cyc. Corp. (not in Perm. ed.) § 4073, p. 6955. We hold that the plaintiffs are precluded from recovering these contributions from Ellison. In doing so we must not be understood as condoning any alleged violation of the law by defendants. We hold as we do solely on the ground that plaintiffs were themselves guilty of permitting the practice and are estopped from now seeking a recovery in behalf of the corporation or its stockholders.

The defendant Smith is charged with the receipt of two bonuses, one for $1,500 in 1924 and one for $750 in 1928. The latter was authorized by the board of directors, these plaintiffs voting for it. They are therefore not in a position to recover this for the corporation. They acquiesced. The $1,500 bonus in 1924 stands on a different footing. It was not authorized, although the trial court finds that Smith thought it was. On the findings Smith must repay this to the corporation.

The judgment is reversed with instruction to modify the conclusions of law in conformity to this opinion and enter judgment accordingly with a provision therein to protect the rights of the corporation in and to the recovery.

The judgment is reversed.

LORING, J. (dissenting in part).

I dissent from the majority opinion in the matter of salaries. On the other points I concur.

The plaintiffs failed of reëlection to the board of directors at the annual stockholders' meeting held in January, 1929. Defendants and their associates then had control, but there is no finding or evidence, as indicated by the majority, that defendants Smith and Ellison caused the election of directors who were their instruments. At the meeting of the board immediately following the stockholders' annual meeting, the salary of the defendant Smith was increased from $15,000 a year to $21,000, and that of the defendant Ellison from $4,500 a year to $7,500. The salary of the secretary of the corporation was also raised. All this was done in one resolution for which these officers as directors had voted, and hence this action was voidable. Jones v. Morrison, 31 Minn. 140, 16 N. W. 854. The following September the board of directors by separate resolution as to each officer confirmed and ratified the salaries attempted to be fixed in January. Each officer whose salary was being voted upon absented himself from the room where the board was in session, and the remainder of the board acted upon the resolution in his absence. The trial court took the view that the action taken in January was voidable at the election of minority stockholders

regardless of the good faith with which the action may have been taken. It did not take into consideration the action taken in September. Based principally upon the testimony of Meyers, the apparent moving spirit of this litigation, it found that the reasonable value of Smith's services to the corporation in 1929 was $15,000, and of Ellison's services $4,500, and ordered judgment against them on these items for $6,000 and $3,000, respectively. In the court's memorandum, which it made a part of its findings, it specifically found that both Smith and Ellison believed they were entitled to receive the higher sums as salary and that "they did not intend to defraud the company or the plaintiffs." There is also a general statement in the memorandum that the court was of the opinion that the officers of the company worked diligently and efficiently and with honesty of purpose. The majority opinion makes the point that these findings of honesty relate to Smith and Ellison alone and not to the board as such. While I think the trial court used "officers" in a sense which included directors, I cannot follow the reasoning which assumes the other directors to be under the control of Smith and Ellison, whose personal motives are found to be proper, and then finds as a matter of law that the board so composed acted from fraudulent motives. A fair construction of the trial court's findings as to motives or purpose must acquit the board of any purpose to oppress. This court is assuming to make a finding of wrongdoing solely on the ground that under the circumstances the raise in salaries was of itself conclusive evidence of fraud, and this against the trial court's informal finding of good faith. Had the trial court found fraud based on excessiveness alone, we might have readily sustained it. But to hold on this record that such excessiveness is conclusive of fraud against a finding of good faith is, in my opinion, unwarranted. The same may properly be said of the expression by the majority that the board fixing the salaries was composed of dummies. There is no such finding, and the evidence neither compels nor supports one. We are therefore confronted with a situation which should be viewed as if the board had fixed larger salaries for the officers than the court has

found to be reasonable, but where the action so taken is specifically found to have been honest and in good faith without intent to defraud.

In matters not ultra vires courts of equity do not assume to review the acts of officers or directors of corporations for mere improvidence or for mistakes of judgment. The question was fully gone into by this court in Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293. If salaries are fixed at an excessive figure for the purpose of preventing minority stockholders from participating in the profits or to depress stock values or otherwise to oppress or defraud such stockholders and violate the fiduciary obligations of the directors, equity will interfere. But where, as here, we have a specific finding which negatives any such wrongful purpose and affirmatively establishes good faith and honesty of purpose, the courts will not interfere and substitute their judgment for that of the directors. Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293; Poutch v. National F. & M. Co. 147 Ky. 242, 245, 143 S. W. 1003, and cases cited. In Fillebrown v. Hayward, 190 Mass. 472, 77 N. E. 45, the court had before it a case where the salary allowed by the board to the treasurer was contended to be excessive. The court held that inasmuch as there was no evidence of any purpose to appropriate corporate profits unlawfully under the guise of salary there could be no recovery. It is true that there was a finding that the corporation was prosperous, but that is not the ultimate point in issue. The issue is one of fraud. There are cases where the language used indicates that mere unreasonableness is sufficient to justify relief, but usually some element is present which indicates fraud, bad faith, or oppression. Of course the salary may be so excessive as of itself to be sufficient evidence to support a finding of fraud, but here we have no such finding.

In the case at bar we have a finding of unreasonableness supported only by the opinion of a lawyer whose motives are quite apparent. A finding of reasonableness would have been amply sustained. It may require more skill, more ability, and more business

acumen to steer a corporation through the shoals of adversity than upon the high seas of success, and services in so doing may save the corporation from the rocks of disaster. The action of the board in raising salaries may have found warrant in the very situation which the majority assume made it "close to criminality." It should be borne in mind that these salaries are to be measured by the standards of the business world, not by the meager pay of public officials.

Courts will usually be found to have keen eyes for fraud or oppression practiced upon minority stockholders, but it would be intolerable to open the doors of equity to review the judgment of corporate boards where no fraud, actual or constructive, is found. In the case of Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 464, 189 N. W. 586, 27 A. L. R. 293, cited by the majority, this court said:

"The dissenting stockholder should come into court with proof of wrongdoing or oppression and should have more than a claim based on mere differences of opinion upon the question whether equal services could have been procured for somewhat less."

In 5 Fletcher, Cyc. Corp. (Perm. ed.) § 2171, p. 494, it is stated that the better view seems to be that the action of the directors will not be set aside unless the result is an oppression of the minority. I regard it as the most practical as well as the most logical rule, and the majority seem to concede that it is the law in this state.

The action taken in September is undisputed and was legal under the decision in Seitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293. That it occurred after the commencement of the litigation does not invalidate it. Of such action the supreme court of California said:

"This resolution had the effect to validate the original resolution, and, for the purpose of justifying the action of the defendant in taking the salary, is to be construed with the same effect as if the original resolution had been properly adopted." Wickersham v. Crittenden, 110 Cal. 332, 334, 42 P. 893, 894.

I think there should be a reversal of judgment as to salaries.

UPON APPLICATION FOR REARGUMENT.

On April 29, 1932, the following opinion was filed:

PER CURIAM.

Respondents petition for a modification of the opinion herein so as to allow the judgment against defendant Ellison to include an item of $400 spent by him for political purposes between January 8, 1929, and July 18, 1929, with interest from last named date. The opinion held that the court below was in error in allowing a recovery against Ellison of the sum of $4,440 of the corporate funds expended by him for political purposes because of the fact that plaintiffs were on the board of directors and must be held to have known of and to have consented to such wrongful diversion. Inadvertently we overlooked the fact that of the 24 items which made up the sum of $4,440 there was this item of $400 expended by Ellison after plaintiffs ceased to be officers and agents for the corporation.

Under the law declared in the opinion, there should be a recovery against defendant for this $400 and interest from July 18, 1929, and to that extent the opinion heretofore filed is modified and a rehearing denied.