## HOLTHUSEN v. EDWARD G. BUDD MFG. CO. (FELDMAN, Intervener).

### Civil Action No. 3223.

District Court, E. D. Pennsylvania.

Oct. 8, 1943.

Application to Dissolve Injunction Granted Dec. 29, 1943.

See 53 F.Supp. 488.

---

See, also, 50 F.Supp. 621.

Spencer Pinkham (of Holthusen & Pinkham), of New York City, and Frederick B. Smillie and A. Benjamin Scirica (of Smillie & Bean), both of Norristown, Pa., for plaintiff.

Robert D. Abrahams and George Scott Stewart, Jr., both of Philadelphia, Pa., for intervening plaintiff.

Robert T. McCracken and Henry S. Drinker, Jr., both of Philadelphia, Pa., for defendant.

BARD, District Judge.

The complaint in this matter was filed by a holder of common stock of the defendant corporation on behalf of himself and of any other stockholders who might join or intervene therein, to enjoin defendant from granting options for the purchase of 300,-000 shares of authorized but unissued common stock to certain of its executive officials and other employees. Most of the facts were admitted or stipulated at the time of hearing, and there is presented the question whether they entitle the plaintiff to the relief he seeks.

Under date of May 5, 1943, defendant's president sent to its shareholders a letter containing a report on the operations of the company, a notice of a special and adjourned annual meeting of shareholders to be held July 13, 1943, and a proxy statement. Among the stated purposes of the meeting was the adoption of a new article to the by-laws of the company authorizing it "to grant to such of the company's executive and administrative employees (including officers) as the Board of Directors may determine, options, expiring five years from their issuance and not transferable except on the death of the holder, to purchase an aggregate of not in excess of 300,000 authorized and unissued shares of Common Stock of the Company", at a price equal to 125% of the market price of such stock at the time of the granting of the options.[1]

Prior to July 13, 1943, the date fixed for the meeting, plaintiff filed his complaint in this case alleging that the proposed by-

---

[1] The reasons for the recommendation of the proposed new by-law were stated by defendant's president as follows: "The Board of Directors of the Company is of the opinion that, in view of the vast increase in effort made and responsibility carried by a number of the officers and key employees of the Company, it is only fair and in the best interests of the Company to afford these men some kind of inducement for continued activity in the upbuilding of the Company, and that they must be retained and their best efforts assured if the Company is to continue to progress in the future as it has in the past."

law was illegal and incapable of enactment by the shareholders. He moved for an injunction prohibiting defendant and its officers and directors from enacting, or attempting to enact, or permitting its shareholders to vote on the proposed article of the by-laws. Defendant filed a motion to dismiss the complaint on the ground that it failed to state a claim on which relief could be granted. Argument on these two motions was had before me, and on July 9, 1943, I handed down an opinion denying both motions, 50 F.Supp. 621.

Plaintiff's motion was denied on the ground that the proposed by-law was not self-operative and its mere adoption by the shareholders would not irreparably harm non-assenting shareholders or deprive them of their right to challenge the directors' exercise of the power granted thereby, if illegal. Moreover, as pointed out in the opinion, a failure of the shareholders to adopt the proposed by-law would render the plaintiff's complaint moot.

The defendant's motion to dismiss the complaint was likewise denied on the ground that the questions raised by the complaint could be determined if the by-law were adopted and action thereunder proposed by the board of directors, pending which the court retained jurisdiction of the case under its equity powers.

At the meeting of the shareholders a total of 67% of all the outstanding votes was cast in favor of the adoption of the by-law and approximately 5% against it, the remaining shareholders not voting. Under the authority of this by-law the directors propose to grant options for the entire 300,000 shares to 160 specified officers and employees. Pursuant to a suggestion contained in my former opinion, the defendant gave plaintiff due notice of the plan adopted by its board of directors, and he applied for an injunction against the granting of the options, pursuant to which application hearing in this matter was held. Prior to the hearing, another holder of common stock intervened as a party plaintiff. Counsel for defendant very commendably stated to the court that no options would actually be issued to any of the optionees until the court renders a decision in the instant matter.

The options, the form of which is in evidence, entitled their holders to purchase a stated number of shares of the defendant at any time within five years from their dates at a price equal to 125% of the market price on the dates of their issuance. They are stated to be non-transferable except by operation of law upon the death of the holder, in which event their rights are exercisable by the heirs, executors or administrators of the holders. It is further provided that the options shall not be exercisable by their holders after their employment by defendant has been discontinued, unless otherwise specified by the board of directors.

Plaintiff contends that the granting of the options on these terms and conditions constitutes a gift of corporate property wholly without consideration and that neither the directors nor the majority shareholders have a right to make a gift of its property over the objection of any minority shareholder. He further contends that Section 612 of the Pennsylvania Business Corporation Act of 1933,[2] which authorizes the creation of an employees' share purchase plan, and on which defendant relies as authority for the by-law in question, is inapplicable and, in any event, does not authorize a gift of corporate property.

Considering first the applicability of the Pennsylvania statute, the section relied upon states:

"Employees' share purchase plan

"Unless otherwise provided in its articles, every business corporation may provide and carry out a plan for the issue and sale of its authorized but unissued shares to its employees, or to the employees of any subsidiary corporation, or to a trustee on their behalf, without first offering such shares to its shareholders, upon such terms and conditions, and in such manner, as shall be provided in the by-laws, except that shares subject to preemptive rights may be so issued and sold under such plan only with the written consent or affirmative vote of the holders of two-thirds of the shares entitled to exercise preemptive rights with respect thereto."[3]

---

[2] Act of May 5, 1933, P.L. 364, § 612, 15 P.S.Pa. § 2852—612.

[3] More than two-thirds of the common stock entitled to preemptive rights approved the by-law and the plaintiff makes no argument based on any violation of his preemptive rights.

Plaintiff argues, first, that the granting of options to purchase shares is not the "issue and sale" of shares within the language and intent of this section. But the section expressly grants authority to a corporation "to provide and carry out a plan" for the issue and sale of stock to its employees on such terms and conditions as shall be provided in the by-laws. There appears to be no reason why a corporation may not adopt a plan for the issue and sale of stock to its employees which operates by means of the granting of options. Surely a plan by which employees become entitled to purchase shares of stock of their corporate employer after a specified period of employment, for example, would be entirely within the purview of a "plan for the issue and sale" of the corporation's stock to its employees, even though the plan thereby granted them options to purchase the stock.

The same answer applies to plaintiff's further argument that this section of the Business Corporation Act is limited by Section 603 of the same Act,[4] which provides that shares of the corporation may not be issued except for money, labor done, or property actually received. No shares of the defendant corporation are, under this by-law and plan, to be issued except for money because the right granted to the holder of the option is merely to purchase the stock of the defendant at a specified price. Such limitation, if any, as may be imposed on Section 612 of the Business Corporation Act by Section 603 thereof in no way, therefore, precludes the adoption of a plan providing for the issuance of stock for cash.

The intervening plaintiff offers one further argument why the plan adopted is not within the scope of Section 612. His argument is that it is not a plan for the sale of shares to the corporation's employees, since at the time the options may be exercised, the holders may no longer be employees. This objection, which was raised at the first hearing on the motions of the parties, defendant has since sought to meet by inserting a provision in the options that they may not be exercised after the holders' employment by defendant has been discontinued, "unless otherwise specified by the Board of Directors." This reservation was made, according to the defendant, to allow some discretion to the directors in this respect in such eventuality as the entry by an employee into the service of his country or his sustaining a disabling injury during the course of his employment. It is true that this reservation leaves open the possibility of abuse of that discretion and that the intervening plaintiff's argument is not without force. In view, however, of my conclusions on the merits of the present plan, set forth later in this opinion, I do not find it necessary to decide whether the plan is beyond the authority of the statute because the employees to whom the options were granted may, subject to the discretion of the board of directors conferred upon it by a duly adopted by-law, not be employees at the time of their exercise of their options.

This brings us to the more difficult and serious question whether the granting of these options is not a gift of the assets of the corporation or is not so out of proportion to the value of any consideration received therefor as to amount to waste of corporate property. The Supreme Court of the United States has held that a waste of corporate property may not be justified by the fact that it results from the carrying out of the specific terms of a by-law duly adopted by the shareholders. In Rogers v. Hill, 289 U.S. 582, at page 591, 53 S.Ct. 731, at page 735, 77 L.Ed. 1385, at page 1391, 88 A.L.R. 744, the Supreme Court stated:

"We come to consider whether these amounts are subject to examination and revision in the District Court. As the amounts payable depend upon the gains of the business, the specified percentages are not per se unreasonable. The by-law was adopted in 1912 by an almost unanimous vote of the shares represented at the annual meeting and presumably the stockholders supporting the measure acted in good faith and according to their best judgment. The tabular statement in the margin shows the payments to individual defendants under the by-law. Plaintiff does not complain of any made prior to 1921. Regard is to be had to the enormous increase of the company's profits in recent years. * * *

"While the amounts produced by the application of the prescribed percentages give rise to no inference of actual or constructive fraud, the payments under the by-law have by reason of increase of profits become so large as to warrant investigation in equity in the interest of the company. Much weight is to be given to the action of the stockholders, and the by-law is supported by

---

[4] Act of May 5, 1933, P.L. 364 § 603, 15 P.S.Pa. § 2852—603.

the presumption of regularity and continuity. But the rule prescribed by it cannot, against the protest of a shareholder, be used to justify payments of sums as salaries so large as in substance and effect to amount to spoliation or waste of corporate property. The dissenting opinion of Judge Swan indicates the applicable rule: 'If a bonus payment has no relation to the value of services for which it is given, it is in reality a gift in part, and the majority stockholders have no power to give away corporate property against the protest of the minority.' [2 Cir.] 60 F.2d 109, 113. The facts alleged by plaintiff are sufficient to require that the District Court, upon a consideration of all the relevant facts brought forward by the parties, determine whether and to what extent payments to the individual defendants under the by-laws constitute misuse and waste of the money of the corporation. Booth v. Beattie, 95 N.J.Eq. 776, 118 A. 257, 123 A. 925; Scott v. P. Lorillard Co., 108 N.J.Eq. 153, 156, 154 A. 515, affirmed 109 N.J.Eq. 417, 157 A. 388; Nichols v. Olympia Veneer Co., 139 Wash. 305, 311, 246 P. 941, 48 A.L.R. 504; Collins v. Hite, 109 W.Va. 79, 84, 153 S.E. 240; Putnam v. Juvenile Shoe Corp., 307 Mo. 74, 91 et seq., 269 S.W. 593, 40 A.L.R. 1412; Stratis v. Andreson, 254 Mass. 536, 539, 150 N.E. 832, 44 A.L.R. 567; Lillard v. Oil, Paint & Drug Co., 70 N.J.Eq. 197, 206–209, 56 A. 254, 58 A. 188; Wight v. Heublein, 4 Cir., 238 F. 321, 324; Seitz v. Union Brass & Metal Mfg. Co., 152 Minn. 460, 464, 189 N.W. 586, 27 A.L.R. 293; Sotter v. Coatesville Boiler Works, 257 Pa. 411, 422, 423, 101 A. 744."

■ Plaintiff urges that the options are valuable and that their grant to the specified officers and employees is without consideration. Defendant does not contend that the optionees undertake to purchase any of the stock or to continue in the employ of the defendant in consideration for the grant of the options. Moreover, past services of employees to whom options are granted do not constitute consideration for their grant. Richardson v. Blue Grass Mining Co., D.C., 29 F.Supp. 658, affirmed 6 Cir., 127 F.2d 291; In re Fergus Falls Woolen Mills Co., D.C., 41 F.Supp. 355, affirmed on this point 8 Cir., 127 F.2d 491; Provident Trust Co. of Philadelphia v. Crouse, 40 Pa. Dist. & Co. Rep. 628; Annotation 40 A.L.R. 1432. Defendant's position is that the granting of the options acts as an incentive to the optionee to continue in

defendant's employ and intensifies his interest and zeal in its success, and that consideration exists by reason of the action taken pursuant to the Pennsylvania statute. In this connection it cites Diamond v. Davis, Sup., 38 N.Y.S.2d 103, affirmed 265 App.Div. 919, 39 N.Y.S.2d 412, in which the court, in upholding the validity of an option given to a principal officer of a corporation under an employees' stock purchase option adopted pursuant to a New Jersey statute substantially similar for present purposes to the Pennsylvania Act, said at page 113 of 38 N.Y.S.2d: "It may be, as plaintiff contends, that a bonus payment which has no relation to the value of the services for which it was given is a gift, especially if there is overreaching by the beneficiary, and that the majority of the stockholders have no power to give away corporate property against the protest of the minority. Rogers v. Hill, 289 U.S. 582, 53 S.Ct. 731, 77 L.Ed. 1385, 88 A.L.R. 744. This, however, is only half stating the rule. Where the services are of value and are so recognized, in the absence of statutory provision or decision to the contrary, stockholders and directors acting in good faith may grant a bonus, or an option, to a valuable officer, by which a proprietary interest may be purchased by him or any employee so favored, at a price fixed in the agreement, as an incentive to retain his services, sharpen his interest, intensify his zeal, spur him on to more ardent effort in the interest and for the benefit of the company, and to enable him thereby to share in the resulting success of the enterprise."

■ There can be no doubt that the granting of bonuses to employees may have a legitimate and valid function in a business whether conducted by a corporation or any other legal entity. It is likewise true that the board of directors of the corporation should have wide discretion in determining the amount of bonuses to be granted to its employees and the terms and conditions upon which they may be granted. But the amount of a bonus and the terms and conditions on which it is to be computed must have some reasonable relation to the services to be rendered. In the instant case, the bonuses granted have little or no relation to the services to be rendered. The persons to whom they are granted undertake no obligation to continue in defendant's employ for any specified period of time, contrary to the factual situation in the Diamond

case, relied upon by the defendant.[5] At least equally significant is the fact that the right to exercise the option, or the extent to which it may be exercised, is in no way dependent upon the actual length of future employment by the optionee. It is the action of the stock market rather than the extent of the services rendered to the defendant which is the factor which will control the exercise of the option. Thus, a sharp rise in the value of the stock in the market to a point above the option price might occur one month, six months, a year, three years, or not at all within the five year period of the option.

The argument that the services of the optionees will tend to increase the earnings of the company, and in turn the market value of the stock, ignores the numerous and extraneous factors which experience has shown motivate fluctuation of prices on the stock market, as well as the debt and capital structure of the defendant, which would make the effect of increased earnings on the market value of the stock highly dubious.[6]

At the very least, conceding for argument's sake that some relationship between the services of the optionees and the market value of the common stock might exist, the absence of any relationship between the length of time an optionee must work and the right to exercise his option renders the grant of the option a disbursement of valuable property of the defendant without consideration other than the hope of a continuance of the optionees' services for an indeterminate period.

In Rogers v. Hill, supra, the amount of a bonus to certain corporate officers was fixed by a by-law at a specified percentage of the increased profits of the corporation. The Supreme Court nevertheless held that the payment of such a bonus for services actually rendered by these officers might constitute a waste of the corporate assets, where the profits over a period of years had risen so greatly as to make the amount of the bonus bear no reasonable relationship to the value of the services rendered. If the disbursement of a bonus to officers under a by-law duly adopted and providing a basis for determining the amount of the bonus which has on its face a reasonable relationship to services to be rendered may nevertheless constitute in law a waste of corporate assets, even after services for a specified period have already been rendered in reliance on such by-law, much more so does the distribution of valuable property of a corporation in return for the hope of retaining the service of the optionees for an indeterminate future period.

Nor is there any merit to the contention that the plaintiff has failed to establish that the options have any value. Apart from the expert testimony offered by the plaintiff for this purpose, which certainly tends to establish some value for the option, the entire plan adopted by the defendant is based on the theory that it is the value of these options which will operate as the incentive to their recipients to remain in the employ of the defendant. Defendant's answer that these options have only a future value and no present value appears to be based largely on the fact that they are non-transferable and hence that the optionees cannot immediately realize on them. This answer tacitly concedes that, if transferable, the options could readily be sold—a concession certainly in accordance with the facts. It is therefore clear that whether the options have any value to the optionees, they certainly have value to the defendant, and the defendant is therefore disposing of something of present value to it which it could readily sell to other persons.

The grant of these options, therefore, without consideration other than the hope of retaining the donees in the employ of the defendant, is squarely within the language of Judge Swan quoted with approval by the Supreme Court in Rogers v. Hill, supra: "If a bonus payment has no relation to the value of services for which it is given, it is in reality a gift in part, and the majority stockholders have no power to

---

[5] In the Diamond case a contract of employment was entered into between the corporation and Davis in which the optionee agreed to continue in the employment of the corporation, terminable only on one year's notice, and the corporation granted the option in question "as one of the terms of said employment".

[6] Loans in excess of $12,000,000 have been made by the defendant under an agreement not to declare or pay any dividend on, or to purchase or retire, any of its capital stock until the loans have been repaid. In addition, as of December 31, 1941, there were arrearages on 7% cumulative preferred stock since November 1, 1930 in excess of $4,580,000 and sinking fund instalments on the preferred stock were in arrears in excess of $2,600,000.

give away corporate property against the protest of the minority."

Accordingly, it is hereby decreed that the defendant be perpetually enjoined from granting the proposed options to its officers and employees.