## H. E. GIPSON AND OTHERS v. HANNAH BEDARD AND OTHERS.[1]

December 9, 1927.

No. 26,209.

**Complaint insufficient.**

1. Complaint considered and *held* not to state facts sufficient to constitute a *cause of action* entitling plaintiffs to the equitable relief demanded.

**Purchase of its stock by corporation cannot be attacked by preferred stockholders.**

2. Under the facts pleaded, the purchase by a corporation of its own stock was not ultra vires, nor was it a transaction which the holders of preferred stock, by a stockholders' suit, can attack.

**Meaning of the term "insolvency."**

3. The term "insolvency" as understood in dealing with contracts challenged on the ground of fraud, actual or constructive, has reference to insufficiency of assets of debtor to cover his liabilities.

[1]Reported in 217 N. W. 139.

Corporations, 14 C. J. p. 927 n. 28; p. 942 n. 48; 14a C. J. p. 275 n. 58; p. 277 n. 60.

Insolvency, 32 C. J. p. 805 n. 7.

See note in 61 L. R. A. 621; 25 L.R.A.(N.S.) 50; 30 L.R.A.(N.S.) 694; 44 L.R.A.(N.S.) 156; L. R. A. 1916F, 286; .7 R. C. L. 547; 2 R. C. L. Supp. 407.

Plaintiffs appealed from a judgment of the district court for Hennepin county, Montgomery, J. entered upon an order granting defendants' motion for judgment on the pleadings. Affirmed.

*Grimes & Maxwell* and *Selover & Mansfield,* for appellants.

*Lancaster, Simpson, Junell & Dorsey,* for respondent Minneapolis Trust Company.

*Leonard, Street & Deinard,* for respondents Hannah and Inez M. Bedard.

QUINN, J.

This is an appeal from a judgment of dismissal without prejudice and for costs, entered upon an order granting respondents' motion for judgment on the pleadings on the ground that the complaint does not state a cause of action.

It is alleged in the complaint that A. C. Bedard died testate at his home in Hennepin county, September 21, 1921; that on October 24, 1921, the Minneapolis Trust Company was constituted executor of his estate and ever since has been acting as such; that the will created certain trusts in favor of the defendants Hannah and Inez M. Bedard, widow and daughter of the deceased, and the trust company was made trustee; that at the time of his death Bedard owned 656 1/3 shares of common stock of the defendant Progressive Products, Incorporated, of the par value of $100; that on March 31, 1922, the trust company sold and delivered such stock to the Progressive company for $65,633.33, of which amount $21,855.56 was paid in cash, $21,900 in preferred stock of the company, and the balance by three notes of the company of equal amounts; that two of such notes were turned over to the widow pursuant to the provisions of the will and the other is yet in the possession of the

trustee; that to make such cash payment the company borrowed $21,855.56; that on May 1, 1923, the trust company turned in to the Progressive company the $21,900 of preferred stock and the same was canceled and four notes, aggregating that amount, were executed by the Progressive company to the trust company therefor; that such notes are unpaid; that the Progressive company paid interest on such notes and dividends on such stock prior to July, 1925, at which time the receivers were appointed, who have ever since been administering the affairs of the Progressive company for its creditors.

The pleadings show no restrictions in the company's articles against the purchase of its own stock. The articles of incorporation of the Progressive company are set forth in the complaint and provide, among other things, that:

"In the event of liquidation, dissolution or winding up of the corporation, whether voluntary or involuntary, the holders of the First Preferred Stock shall be entitled to be paid in full the par value of their shares, plus a premium of Five Dollars ($5.00) on each First Preferred Share and all unpaid dividends thereon, before any amount shall be paid to the holders of the Second Preferred Stock, or to the holders of the Common Stock * * *. No conveyance of the real estate shall be made and no mortgage or lien shall be created on its assets, and no other or additional stock restricting or limiting the priority or other preferences, or rights of the First Preferred Stock shall be issued without the consent of the holders of 75 per cent par value of the First Preferred Stock then outstanding * * *. The corporation shall at all times maintain net tangible assets equal to three times the par value of the outstanding First Preferred Stock."

The prayer in the complaint is that the sale and transfer of the common stock to the Progressive company by the trust company be vacated, set aside, canceled and held for naught, and that such stock be returned or reissued to the executor or to the person or persons now entitled thereto; that such promissory notes now outstanding

be surrendered up and canceled; that the money paid to the defendants or either of them on account of the sale of such common stock be returned to the Progressive company or to the receivers, etc.

Judged by the prayer for relief and the facts set forth in the complaint, the action must stand or fall as a stockholders' suit brought for and on behalf of the corporation. As such, the pleading must contain all the elements necessary to sustain such an action. It must contain all the allegations which the corporation would be required to make to entitle it to the relief demanded. The relief asked for is equitable. The complaint before us contains no allegation of any irreparable injury to the corporation. There is no allegation that the common stock which the company received in the initial transaction was worth less than the amount paid therefor. For all that appears such stock may have had a value equal to or even in excess of the consideration paid. There is no direct allegation in the pleading that the transaction was unfair or in fraud of the corporation, or that it was ultra vires, illegal, fraudulent, or oppressive. The rule of pleading applicable is well stated in 2 Clark & Marshall, Private Corp. p. 1685:

"The doctrine that a stockholder may sue in equity to redress or prevent wrongs on the part of the directors or majority of the stockholders, or to obtain redress on behalf of the corporation for injuries by strangers, where he cannot obtain relief through the corporation, does not give a stockholder the right to maintain such a bill where the act complained of, or the refusal of the directors or majority of the stockholders to sue, is properly within the discretionary power with respect to the internal affairs of the corporation vested in them by the charter. So long as they act, not fraudulently, illegally, or oppressively, but in good faith, in the exercise of their discretion, and for what they deem to be the best interests of the company, a court of equity has no jurisdiction to interfere at the suit of a dissenting stockholder, or a dissenting minority of the stockholders. Such a suit cannot be maintained by showing a mere mistake * * * on the part of the directors or majority

of the stockholders. Their conduct must be *ultra vires,* illegal, fraudulent, or oppressive."

It was so held in Rothwell v. Robinson, 44 Minn. 538, 47 N. W. 255; Hawes v. Oakland, 104 U. S. 450, 26 L. ed. 827; see 2 Dunnell, Minn. Dig. (2 ed.) § 2074. An allegation merely setting forth the purchase of its own stock and the consequent depletion of corporate assets does not, standing alone, amount to an allegation of irreparable injury, wrong or illegality sufficient to support a prayer for equitable relief to the corporation from such transaction.

It is clear under the decisions in this state and the facts pleaded that the purchase of its own stock was not ultra vires, nor was it a transaction which the holders of preferred stock, by a stockholders' suit, can attack. State ex rel. Clapp v. Minnesota Th. Mfg. Co. 40 Minn. 213, 227, 41 N. W. 1020, 3 L. R. A. 510; 2 Fletcher, Corp. § 1136; Lowe v. Pioneer Threshing Co. (C. C.) 70 F. 646; In re S. P. Smith Lbr. Co. (D. C.) 132 F. 618.

The preferred stock does not, as contended on behalf of appellants, have a lien on all the capital and assets of the corporation. It has, however, a preference, under the provisions of the articles which constitute the contract, over the common stock as to certain earnings of the corporation and as to assets on dissolution for a stated amount. But there is no allegation of any violation of the contract in these respects, nor as to the maintenance of a certain ratio of assets to the preferred stock outstanding, nor in any other manner.

Appellants lay much stress upon the allegation that the purchase of such common stock rendered the corporation unable to meet its obligations as they matured in the regular course of business; in other words that it was insolvent. But in dealing with contracts challenged on the ground of fraud, actual or constructive, the term "insolvency" has reference to insufficiency of assets of the debtor to cover his liabilities. Marvin v. Anderson, 111 Wis. 387, 87 N. W. 226. It follows that so far as appears from the complaint the transaction was a business one with which equity will not interfere.

Affirmed.

STONE, J. (dissenting).

The result of this decision will be a final judgment resulting not from a trial on the merits but from what may be only a technical deficiency of the complaint. The allegations of the answer cannot be considered because there is a general denial of them in the reply. So the complaint is entitled to a liberal construction. But the opinion construes the complaint strictly—exceedingly so—against plaintiffs.

It appears that the holders of the first preferred stock were entitled to the usual preference as to dividends and in the event of liquidation to par value, plus a premium of five dollars, on each share before any payment to the holders of the second preferred or common stock. After such payment of the first preferred, the holders of the second preferred are "entitled to be paid in full the par value of their shares before any amount shall be paid to the holders of the common stock." These provisions are in the contract of incorporation. If a violation of such contract rights is disclosed by the complaint, a remedy should be afforded.

The complaint, in addition to pleading the applicable provisions of the articles of incorporation, states that the result of the transaction was to render the corporation "unable to meet or pay its debts or obligations in the ordinary course of business;" that a judgment against it resulted; and that receivers were appointed. For what purpose is not stated, but certainly the inference is that there has been an adjudication of insolvency, for that is the ordinary result of a judgment against a corporation and its inability to pay it. It is also alleged that the purchase of the common stock and the payment of the purchase price will render all the preferred stock worthless, "whereas, if said notes are cancelled and said moneys paid out for said common stock returned to said corporation, said preferred stock will be worth more than the par value thereof." These allegations negative the suggestion that the purchase might have been made from surplus profits as distinguished from capital assets, and it is of course wholly immaterial that in form the corporate action was unobjectionable. The complaint could have been worded somewhat more carefully with respect to basic facts

as distinguished from conclusions or results. But when a pleading is subjected to a motion for judgment, it is entitled to a liberal construction. Here I think the motion should have been denied so as to permit a trial on the merits with such amendments as might be called for.

Aside from the question of whether in a given case a corporation may purchase its own stock, it must be the rule that where there are preferred stockholders having such contract rights as appear here, they should have an appropriate remedy to protect such rights against invasion by transactions between the corporation and other stockholders which are wrongful because in violation of the articles of incorporation.

I cannot see that Marvin v. Anderson, 111 Wis, 387, 87 N. W. 226, has much bearing. That was an action by a trustee in bankruptcy to set aside an alleged fraudulent deed of the bankrupt corporation. In the same transaction the corporation had taken in some of its own stock held by one Anderson. The transaction was acquiesced in by all the stockholders for more than two years, and the only claim proved in bankruptcy which existed at the time of the transaction was a small one which prior to the commencement of the action had been paid. It was held that the corporation had power to purchase its own stock, but such a conclusion does not touch the question whether it may buy in common stock when the result is to breach a contract right of preferred stockholders. That question was not present nor even related to any of those discussed in Marvin v. Anderson. The distinction there accurately drawn between the meaning of "insolvency" in bankruptcy law and the "general meaning" of the same term is not material here, for the purchase of its common stock by a corporation might seriously invade the rights of preferred stockholders without causing insolvency of any kind.

With respect to stock preferred both as to dividends and in case of liquidation, it cannot be argued that there is no depletion of security by the purchase by the corporation of its common stock, even though the purchase be at less than actual value. That is because before the transaction the preferred stock has a claim on the assets paramount to that of the common and afterwards the

security has been reduced by whatever has been paid for the common stock. The purchase of the common has no more helped the preferred than the release of a junior aids a paramount lien. Although no lien is now present, there are the paramount rights of the preferred and the subordinate rights of the common stockholders in a common fund, the corporate assets. And the effect on those rights of the transactions now challenged is, normally, the same as would follow from the wrongful use of security to pay a junior in disregard of a senior charge.

The suit being in equity and there being a prayer for general relief, any omission or other error in a prayer for specific relief has nothing to say to the sufficiency of the complaint; and if the plaintiffs have shown themselves injured in such a way that equity ought to interfere, judgment should not go against them on the pleadings. There should be opportunity for amendment and trial on the merits. In this connection the complaint is not open to the construction of being on behalf of the corporation or in the nature of the ordinary stockholders' suit to remedy a wrong done by the corporation to all the stockholders. It is rather a suit by individual preferred stockholders, without joining other preferred stockholders, to remedy a wrong done through a breach by the corporation and certain of the common stockholders of the contract of incorporation. It is therefore not open to any objections peculiar to a derivative action where stockholders sue on behalf of the corporation. For the reasons already indicated, and without ignoring the respects in which the complaint could be put farther beyond criticism, I think it sufficient to have prevented an adverse judgment on the pleadings. For that reason I dissent.

WILSON, C. J. (dissenting).

I concur in the dissent.