# WALTER P. BUTLER v. BUTLER BROTHERS AND OTHERS.[1]

May 20, 1932.

No. 28,681.

[1]Reported in 242 N. W. 701.

*Oscar Hallam* and *Norbert Willwerscheid,* for appellant.

*Patrick J. Ryan* and *Charles Bunn,* for respondents.

LORING, J.

In an equitable suit for relief on the ground of mismanagement of Butler Brothers, a corporation, the defendants had judgment upon the pleadings. Plaintiff has appealed. He is not a stockholder, but a small number of shares of Butler Brothers stock are held in trust for his ultimate benefit.

The Butler-Ryan Company was incorporated in 1894 by M. P. Ryan and the brothers Walter, William, Cooley, and John Butler. The principal business of the corporation was general construction work and contracting. In 1902 the four Butler brothers purchased the Ryan interest, and the name of the corporation was changed to Butler Brothers. At this time another brother, Emmett, became a large stockholder. Walter Butler was president of the corporation until January, 1927, when Cooley, who is still president, was elected to that office. Since 1914 the principal business of Butler Brothers has been the mining and marketing of iron ore, and the corporation had, at the time this case was brought, amassed net assets exceeding $11,000,000 in value. Its capital stock is divided into 1,000 shares, and each share was therefore worth approximately $11,000 at that time. Other subsidiary corporations were organized to carry out the business plans of the brothers. One such corporation was the Builders Trust Company, which became trustee of certain trusts created by John and Walter for the benefit of their relatives. John Butler was president of this company until his death September 22, 1926. The Farm Mortgage Bond Company was another subsidiary corporation the purpose of which was to make loans and investments. It held stock in Butler Brothers, and that corporation held stock in the bond company. A subsidiary corporation was also organized for the purpose of conducting road building operations. John is alleged to have had much to do with

the mining operations of Butler Brothers, and Emmett worked with him until 1921, when Emmett took charge of the road building operations of the subsidiary corporation. In 1924 John's health became impaired, and Emmett resumed his activities in connection with the mining operations. In the meantime however he had organized two mining corporations on his own account, one the Stanley Mining Company and the other the Manganiferous Iron Company. These companies are alleged to have been engaged in the mining of ores somewhat different in character from those produced by the ordinary mines upon the Iron Range. Stanley Mining Company operates but one mine under lease. To some extent Manganiferous Iron Company produced ordinary iron ore. According to the pleadings, these companies have not reached the dividend-paying stage, but their properties have become of considerable value. It is alleged that Manganiferous Iron Company now has ore reserves exceeding 8,000,000 tons.

January 31, 1927, when Cooley was elected president of Butler Brothers, Emmett was elected vice president and given active management of the affairs of the company. His salary was fixed at $40,000 a year, while that of the president was fixed at $6,000. Pierce Butler, Jr., Hazen E. Butler, and Leo Butler were elected directors. Pierce Butler, Jr. is secretary, and Fred Sommers is treasurer and assistant secretary.

In his lifetime John Butler created seven trusts, one of which was for the benefit of his wife, Margaret Butler, one for each of four brothers and two sisters. The Builders Trust Company was trustee. The property assigned in trust in each case consisted of 16 shares of stock of Butler Brothers and 16 shares of stock of Farm Mortgage Bond Company. May 6, 1927, Margaret Butler died, and in compliance with the terms of her trust the original principal or property included in it was assigned to and divided among the other six trusts. This gave each of the six trusts two and two-thirds more shares of Butler Brothers and a like amount of Farm Mortgage Bond Company stock. The trust in favor of Walter Butler provides that upon his death all of the accumulations then

in the trust estate shall be assigned to and divided equally among three of Margaret's and 17 of John's nephews and nieces, one of whom is the plaintiff, Walter P. Butler. The original principal is to be divided among the surviving trusts which John had created. It is calculated in the briefs that if none of the Butler Brothers stock is sold by the trustees plaintiff will ultimately receive six shares of its stock.

In April and May, 1927, a number of suits were brought by this plaintiff and his near relatives and also by the Builders Trust Company, seeking equitable relief against Butler Brothers and various of these individual defendants for alleged mismanagement of that corporation. July 21, 1927, these suits were dismissed upon the merits. Walter acquired defendants' stock in Builders Trust Company, and an agreement was made by which this plaintiff agreed to be bound that the respective plaintiffs, including Walter P. Butler, should not institute any further action against the corporation or its directors except for acts and transactions happening "after January 29, 1927, and which are not shown by the various records and reports, originals or copies of which have heretofore been furnished to or inspected by first party [Walter Butler] nor by the other information hitherto given him in writing." The complaint in one of the suits then dismissed is a part of this record. As a part of this settlement the Builders Trust Company resigned as trustee, the First Minneapolis Trust Company became trustee of the Walter Butler trust, and the Northwestern Trust Company, Pierce Butler Jr. and Francis D. Butler became trustees of the remaining five trusts. In 1928 Walter Butler and the Builders Trust Company, with the written consent of this plaintiff, sold all of their stock interest in Butler Brothers, in Farm Mortgage Bond Company and affiliated corporations to J. Carroll Barr, acting for Butler Brothers, for a consideration of $1,900,000. Other minority stockholders' actions, including one by Builders Trust Company, had been brought in 1928 and were dismissed about the time the Walter Butler stock was purchased by the corporation.

148

This suit was commenced February 1, 1929. The first grievance set out in the complaint is a charge of conspiracy on the part of defendants to elect Cooley Butler president of the corporation in place of Walter Butler, who had held that office for 33 years, and to place the active management of the affairs of the corporation in the hands of Emmett at an excessive salary. Further complaint is made that Emmett is disqualified on account of his ownership of a majority of the stock of Manganiferous Iron Company and Stanley Mining Company, alleged competitors of Butler Brothers. This includes a charge that Emmett Butler has converted property of Butler Brothers to the use of the two mining companies in which he is interested and that Butler Brothers' personal property has been used by those companies without compensation. It is alleged that Cooley Butler performs no services whatever for the $6,000 salary paid him as president, that he lives in California, and that under the by-laws Emmett performs his duties in his absence. Another grievance is that Butler Brothers employed Lewis D. Newman at an exorbitant fee to perform services in connection with the adjustment of a claim made by the United States government for income and profits tax against Butler Brothers. It is also claimed that A. W. Gaumer, a mining engineer, was paid an excessive amount for services and expenses in connection with the same matter, and that an improvident settlement was made with the United States. Many pages of the complaint are devoted to allegations of fraud and misconduct in connection with Emmett Butler's incorporation and management of his two mining companies and the contracts which he made between them and Butler Brothers and between them and the companies who habitually purchased Butler Brothers' ore; and it is claimed that Emmett in his capacity as an officer of his companies occupied office space (value not alleged) belonging to Butler Brothers without payment of rent therefor. An improvident settlement is charged in connection with a suit brought by a minority stockholder in the Quinn Mining Company against Butler Brothers. The purchase of Walter Butler's stock by the corporation is another item of complaint.

After the commencement of this action a supplemental complaint was served, which charges that the individual defendants have negotiated and are about to unlawfully consummate an exchange of the entire capital stock of the Manganiferous Iron Company for 103.31 shares of the capital stock of Butler Brothers, and that defendants propose to form a Delaware corporation and to exchange all of the capital stock of Butler Brothers for stock of that corporation and to sell stock of the Delaware corporation to the public for the purpose of taking up the indebtedness of the Manganiferous Iron Company and of Butler Brothers. It is asserted that the organization of the Delaware company and the exchange of stock cannot be made without the unanimous consent of the stockholders of Butler Brothers, and that the trustees who hold shares of that stock are without power or authority to give their consent. The case seems to have been heard below on the assumption that these two exchanges had taken place.

The prayer for relief in the original complaint consists of 23 paragraphs, but in a general way the relief sought is a receiver for the Butler Brothers corporation; its dissolution; the recovery for the corporation from the individual defendants of the money paid to Newman; the removal of all the officers and directors of the corporation and the election of new officers; a request for an accounting with Emmett Butler and his two mining corporations; a decree that Butler Brothers be substituted for those companies in contracts with purchasers of iron ore, that those companies be restrained from further deliveries under the contracts, and that the ore of Butler Brothers be substituted; that the officers be required to refund to the corporation all compensation received by them since February 1, 1927; that a receiver be appointed for Emmett Butler and for his corporations; and that they restore to Butler Brothers all money and property of that corporation held and used by them or under their control. Injunctive relief is sought in connection with the indebtedness of Butler Brothers and of Manganiferous Iron Company. By the supplemental complaint an injunction is sought to prevent the consummation of the acquisition

of Manganiferous Iron Company by Butler Brothers and to prevent the transfer to the Delaware corporation. The matters covered by the complaint and supplemental complaint will be further discussed in connection with the questions as to whether or not the pleadings as finally framed present an issue for trial. The answers deny all of the allegations of mismanagement and set up the dismissals and settlement of 1927 and the consent of plaintiff to the purchase of the Walter Butler stock in 1928. They also allege that Walter Butler, at the time of the 1927 settlement, was informed of all matters "veraciously" alleged in this complaint which had occurred prior to that settlement. The reply admits the execution of the 1927 contracts and that the suits were dismissed. If the plaintiff is to prevail there must be a well pleaded issue of conduct which is either fraudulent, oppressive, ultra vires, or which constitutes a breach of trust. Gipson v. Bedard, 173 Minn. 104, 107, 217 N. W. 139.

In respondents' brief it is seriously contended that plaintiff's interest in Butler Brothers is not sufficient to justify his bringing this proceeding in equity, but upon oral argument it was conceded that the character of his interest was such that equity would recognize his complaint if well-founded, but it was contended that the comparatively small value of the interest should be given consideration in determining the relief to which he might be entitled. We therefore pass to a determination of other questions. The individual defendants had a perfect right to coöperate to control the management of the corporation as long as they did not defraud or oppress the minority and were not guilty of ultra vires acts or a breach of the trust reposed in them. Therefore in ousting plaintiff's father from the board and placing Emmett in control they were entirely within their rights.

In his reply the appellant admits the execution of the contract not to sue made in 1927 and the dismissals on the merits of previous actions, but he claims that they are ineffectual to bar this action for the reason that the dismissals are alleged to have been made "in consideration of certain reservations, conditions, and obliga-

tions to be performed by other parties which have not been complied with or performed." He does not specify what obligations have not been performed or to what extent or by whom performance is lacking. Liberal as are our rules for the construction of pleadings, they are not liberal enough to permit a holding that such a reply raises an issue as to the admitted contract or the dismissals being still in force. In that state of the pleadings no issue is raised on nonperformance by defendants who were parties to the contract and to the dismissals. The question of whether or not the covenants were concurrent is likewise eliminated.

■ We come then to the question as to what extent matters alleged in this complaint are barred by the contract and dismissals. The covenant not to sue covers all acts and transactions except those occurring after January 29,.1927, of which Walter Butler had not been informed. That plaintiff may not have been informed is of no moment because he expressly agreed to be bound by his father's contract, and his father covenanted not to sue on the transactions of which he had been informed when the contract was made as well as upon all that had occurred prior to January 29, 1927.

The complaint in the action commenced in May, 1927, by Walter Butler and this plaintiff and others against Butler Brothers and its directors, which was dismissed on the merits, was in many of its allegations remarkably like the complaint now before us. With more detail it alleged the conspiracy to oust Walter Butler from the presidency and to elect Cooley in his place and to make Emmett vice president with managerial powers at salaries as alleged in this complaint. It alleged the incorporation by Emmett of his two competing mining companies and their use without pay of equipment, including a steam shovel belonging to Butler Brothers. The long term contracts by which Stanley Mining Company and Manganiferous Iron Company sold their output over an extended period of years at advantageous prices to Jones & Laughlin Steel Corporation are in the present action alleged to have been made in 1926, while Walter Butler was still president of Butler Brothers. The trial court took the view that all alleged misconduct in regard to

Emmett's two companies was covered by the dismissals on the merits, by the covenant not to sue, and by the subsequent purchase of the Manganiferous company by Butler Brothers. Obviously, if the Manganiferous company has profited at the expense of Butler Brothers, the last mentioned company now has the advantage of such profits. No dividends have been declared by either Manganiferous or Stanley; hence none of the alleged benefits have been passed on to the stockholders. We regard the trial court's views on these matters as correct. The Stanley Mining Company has not been absorbed by Butler Brothers, and there are allegations that throughout 1927 and to the commencement of the action ore and personal property of Butler Brothers have been wrongfully diverted to it and Manganiferous Iron Company. The memorandum of the trial court clearly indicates that the distinction between Stanley and Manganiferous was not called to its attention. The briefs of counsel on both sides ignore this distinction, so it is not considered by this court.

In the matter of salaries claimed to be excessive, the complaint in the 1927 action charged that Cooley Butler's salary of $6,000 a year was fixed with knowledge that he was a resident of Los Angeles and that he would not be able to perform the active duties of president, and with the intent to give Emmett the active management of the corporate business at a salary of $40,000 a year. It was alleged that the difference in the salaries indicated the purpose recited. The original fixing of the salaries complained of (and other salaries are included) was in January, 1927, either by the stockholders as alleged in the 1927 suit or by the directors as alleged here, and that feature is barred by the contract and dismissals. The complaint alleges that these salaries have been continued; but we cannot escape the conclusion that their continuance was contemplated when the 1927 settlement was made. Usually the fixing of salaries is a matter within the discretion of the officers charged with the internal management. Where exorbitant salaries are fixed for the purpose of defrauding or oppressing minority stockholders equity will interfere, Seitz v. Union B. &

M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293; but where, as here, the plaintiff has bound himself not to attack the action which fixed these salaries and is likewise barred from doing so by a dismissal of a similar suit upon the merits, we do not regard his hands as sufficiently clean to come into equity and attack the corporate management for continuing a policy which by the covenant and dismissal he has in effect acquiesced in. Barrett v. Smith, 183 Minn. 431, 443, 237 N. W. 15. This should be so where, as here, the plaintiff's interest is comparatively small and his suit bears such conspicuous and conclusive earmarks of being vexatious. The acts here in question are not claimed to be ultra vires.

■ Appellant complains of the purchase in 1928 by Butler Brothers of its own stock and of stock in affiliated corporations from Walter Butler and Builders Trust Company. The purchase was financed by an issue of $1,900,000 of six per cent notes of the purchasing corporation. It is alleged that this transaction will of necessity reduce the dividends on Butler Brothers stock held in trust. This plaintiff, with full knowledge of the details of the transaction, consented to the sale at the time the 1928 litigation was settled. He is therefore not now in a position to invoke the aid of a court of equity to relieve him from the consequences. If he cannot attack the sale, he is scarcely in a position to attack the means by which it was financed. Moreover, other allegations in his pleadings indicate that the transaction was distinctly advantageous to the corporation and to its remaining stockholders, including the trustees. It cannot be said that the purchase was not made out of surplus when the par value of Butler Brothers stock was only $100,000 while its assets are alleged by plaintiff to exceed $11,000,000 in value.

■ The adjustment of the controversies with the Quinn Mining Company and the United States are characterized by appellant as improvident, as are the payment of fees to Newman and Gaumer. The complaint alleges that the payment to Newman was in furtherance of a conspiracy, but the allegations of fact fall far short of alleging anything which is ultra vires, fraudulent, oppressive, or a breach of trust. These allegations relate to matters which fall

within the discretion of the officers charged with the management of the corporate affairs. It would be intolerable if a minority stockholder could invoke equitable relief in regard to every corporate transaction which he might deem improvident. Gipson v. Bedard, 173 Minn. 104, 217 N. W. 139; Mortgage Land Inv. Co. v. McMains, 172 Minn. 110, 121, 215 N. W. 192; Jaques v. Missabe Elec. Co. 172 Minn. 303, 306, 215 N. W. 185; Scitz v. Union B. & M. Mfg. Co. 152 Minn. 460, 189 N. W. 586, 27 A. L. R. 293.

■ The acquisition of Manganiferous Iron Company by Butler Brothers through an exchange of stock is claimed by appellant to be illegal because unanimous consent of all Butler Brothers stockholders was not obtained since the trustees are without power to consent to such "consolidation." Without deciding whether unanimous consent is necessary, we are convinced that the authority given the trustees by the instruments creating the trusts is sufficient for the purpose. Power is given the trustees to "consent" to "reorganizations," to "accept in lieu of such stock the stock of any reorganized corporation," and to have "the same power with respect to any stock at any time forming a part of the trust estate as the absolute owner of any such stock would have, and shall exercise the same judgment and discretion as owners acting for themselves."

■ Our construction of the powers conferred upon the trustees also .validates their consent if given to the proposed exchange of stock with the Delaware corporation.

The judgment is affirmed.

DIBELL, J. (dissenting).

Upon a motion for judgment on the pleadings every reasonable intendment favors their sufficiency. The construction of the court is liberal in their favor. The motion is not a substitute for a demurrer. It is the least effective attack on pleadings. Whether the party whose pleadings are attacked has evidence which will sustain them is not for consideration. It is enough if the facts which he alleges if proved will entitle him to some relief though it be not to the extent or of the precise kind asked. It is not important that the facts alleged look unreasonable or improbable and the case al-

leged not likely provable. The court does not weigh the evidence; it construes the pleadings.

I agree in general with the propositions of law stated in the opinion. I am not satisfied that as a matter of law they apply so that the plaintiff cannot have the ear of the court on evidence which he claims. Once granted that the plaintiff has a sufficient interest to invoke the attention of the court, I think he has stated enough so that he should be allowed to present proof; therefore I dissent.

