Michelle KUNZA, Appellant

v.

**ST. MARY'S REGIONAL HEALTH CENTER, Respondent,**

**Dr. Wade Wernecke, individually, and as an employee of St. Mary's Regional Health Center, Respondent.**

No. A07–0360.

Court of Appeals of Minnesota.

April 22, 2008.

---

Jessica Jean Clay, James H. Kaster, Adam A. Gillette, Nichols Kaster & Anderson, PLLP, Minneapolis, MN, for appellant.

Joseph J. Roby, Jr., Jessica L. Durbin, Johnson, Killen & Seiler, P.A., Duluth, MN, for respondent St. Mary's Regional Health Center.

Daniel J. Ballintine, Larkin, Hoffman, Daly & Lindgren, Ltd., Minneapolis, MN, for respondent Dr. Wade Wernecke.

Considered and decided by
TOUSSAINT, Chief Judge; PETERSON, Judge; and CRIPPEN, Judge.[*]

## OPINION

PETERSON, Judge.

Appellant agreed to refrain from initiating a lawsuit asserting employment-related claims against respondents for a limited time period. Before that time period expired, appellant began this action against respondents, alleging claims covered by the agreement. Appellant voluntarily dismissed some of her claims, and, based on appellant's initiation of this lawsuit during the time period when she agreed not to bring suit, the district court granted summary judgment for respondents dismissing the remaining claims. Respondent Wade Wernecke requested attorney fees, and the district court denied the request. We reverse the summary judgment dismissing the remaining claims and remand for further proceedings, affirm the denial of attorney fees, and deny respondents' motion to strike.

## FACTS

Appellant Michelle Kunza was employed as a ward clerk in the emergency-services department at respondent St. Mary's Regional Health Center. Respondent Wade Wernecke was employed by St. Mary's as an emergency-room physician. On June 28, 2004, appellant reported to the emergency-services-department manager that, for more than two years, she had been sexually harassed and subjected to other offensive and inappropriate behavior by Wernecke. Appellant repeatedly requested that she be transferred because she was being retaliated against by Wernecke and other employees. St. Mary's refused appellant's requests, and appellant resigned on August 19, 2004.

The parties entered into settlement negotiations in an effort to avoid litigation, and, to give them time to negotiate, the parties executed an agreement to toll the statute of limitations. Under the agreement, appellant promised not to sue and file a charge during the term of the tolling agreement, and all parties agreed that any party may cancel the tolling agreement upon ten days' notice. When negotiations broke down, St. Mary's and Wernecke wrote letters to appellant providing notice of cancellation of the tolling agreement. Appellant's counsel received both letters on the same day, and less than ten days later, appellant served the summons and complaint in this action. Both respondents raised a contractual defense under the tolling agreement in their separate answers to appellant's complaint, as

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

amended, and in their answers to interrogatories.

After the parties proceeded through discovery, respondents moved for summary judgment under the tolling agreement and on the merits. Appellant voluntarily dismissed her common law claims for breach of contract, defamation, assault, and intentional and negligent infliction of emotional distress and the claims that she had asserted against Wernecke under the Minnesota Human Rights Act (MHRA).

The district court granted summary judgment for respondents on appellant's remaining claims because appellant brought her action during the time period when she agreed not to initiate an action. Without addressing the merits of the remaining claims, the district court ordered that the claims that appellant voluntarily dismissed be dismissed with prejudice and that the remaining causes of action be dismissed without prejudice. Judgment was entered for respondents.

The district court denied appellant's request for leave to move for reconsideration of the summary judgment order. Both respondents sought costs and disbursements, and Wernecke also sought attorney fees. The district court granted respondents costs and disbursements and denied Wernecke attorney fees. This appeal followed.

Respondents moved to strike portions of appellant's brief, arguing that she raised new issues for the first time on appeal. This court deferred the motion to strike to the panel deciding the case on the merits.

## ISSUES

I. Should respondents' motion to strike portions of appellant's brief be granted?

II. Did the district court err in dismissing appellant's remaining claims because appellant brought her action during the

time period when she agreed not to initiate an action?

III. Did the district court err in denying attorney fees to Wernecke?

## ANALYSIS

### I.

■ Respondents move to strike from appellant's brief her arguments that (1) even if she breached the tolling agreement, her breach directly resulted from respondents' initial breach of the agreement, and respondents should not be permitted to benefit from their own breach; (2) specific performance is a disfavored remedy for breach of contract; (3) she substantially performed her obligations under the tolling agreement, and dismissal of her suit for any alleged minimal nonperformance is a drastic result; and (4) by participating in the lawsuit, respondents waived or abandoned any claim that filing the suit breached the tolling agreement. Respondents contend that appellant did not raise these issues before the district court.

■ A reviewing court generally may consider only those issues that the record shows were presented to and considered by the district court in deciding the matter before it. *Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988). A party may not obtain review by raising the same general issue litigated below but under a different theory. *Id.* (citing *Pomush v. McGroarty,* 285 N.W.2d 91, 93 (Minn.1979) (holding appellant cannot raise new theory of recovery on appeal); *Security Bank of Pine Island v. Holst,* 298 Minn. 563, 564, 215 N.W.2d 61, 62 (1974) (holding that a party cannot shift its position on appeal)). But there is a "well-established" exception to the general rule [that a party may not raise an issue on appeal that the party did not preserve for appeal]: [A]n appellate court may base its decision upon a theo-

ry not presented to or considered by the trial court where the question raised for the first time on appeal is plainly decisive of the entire controversy on its merits, and where, as in [cases] involving undisputed facts, there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question. Factors favoring review include: the issue is a novel legal issue of first impression; the issue was raised prominently in briefing; the issue was "implicit in" or "closely akin to" the arguments below; and the issue is not dependent on any new or controverted facts.

*Watson v. United Servs. Auto. Ass'n,* 566 N.W.2d 683, 687–88 (Minn.1997) (emphasis omitted) (quotation and citation omitted). *See also Jacobson v. $55,900,* 728 N.W.2d 510, 523 (Minn.2007) (holding an appellant may refine an argument made to the district court as long as the argument can be evaluated on the facts already in the record.)

In arguing that specific performance is a disfavored remedy for breach of contract, appellant contends that the district court chose a remedy that is especially harsh and unjust when there are other remedies available. Appellant's argument that she substantially performed her obligations under the tolling agreement also emphasizes that dismissal of her suit for allegedly bringing the suit only a few days early is a drastic result for minimal nonperformance. And appellant's argument that by participating in the lawsuit, respondents waived or abandoned any claim that filing the suit breached the tolling agreement, illustrates the harshness of dismissal as a remedy for an alleged breach that had a negligible impact on respondents' ability to participate in the underlying lawsuit.

All of these arguments relate to the question whether dismissal of an underly-ing lawsuit is an available remedy when the plaintiff in the underlying suit agreed to refrain from bringing the suit for a limited period of time but then brought the suit before the limited time period expired. This is the central issue arising from the dismissal of appellant's suit, and if dismissal is not an available remedy, this issue is plainly decisive of the appeal and neither party has had an advantage or disadvantage on appeal because the district court dismissed appellant's suit without first explicitly analyzing and deciding whether dismissal is an available remedy.

Applying the factors identified in *Watson,* we conclude that (a) whether dismissal is an available remedy for breach of an agreement to refrain from bringing suit for a limited period of time is an issue of first impression in Minnesota; (b) based on available authority, the parties have asserted opposing arguments on appeal that dismissal is, or should not be, an available remedy; and (c) resolving the issue is not dependent on any new or controverted facts. Based on these factors favoring review, we deny respondents' motion to strike arguments from appellant's brief, and, in the interests of justice, we will review whether dismissal of appellant's underlying lawsuit is an available remedy for breach of the tolling agreement. *See* Minn. R. Civ.App. P. 103.04 (appellate court may review any matter "as the interest of justice may require"); *State v. Hannuksela,* 452 N.W.2d 668, 673 n. 7 (Minn.1990) ("[It] is the responsibility of appellate courts to decide cases in accordance with law and that responsibility is not to be diluted by counsel's oversights, lack of research, failure to specify issues or to cite relevant authorities") (quotation omitted); *Greenbush State Bank v. Stephens,* 463 N.W.2d 303, 306 n. 1 (Minn. App.1990) (applying *Hannuksela* in a civil case), *review denied* (Minn. Feb. 4, 1991).

## II.

■ On appeal from a summary judgment, this court examines the record to determine whether any genuine issues of material fact exist and whether the district court erred in applying the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn. 1990). This court reviews de novo whether a genuine issue of material fact exists and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 77 (Minn.2002). "The interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, it is a question of fact and extrinsic evidence may be considered." *City of Virginia v. Northland Office Props. Ltd. P'ship*, 465 N.W.2d 424, 427 (Minn.App.1991), *review denied* (Minn. Apr. 18, 1991).

■ The district court concluded that appellant agreed not to sue for ten days after notice of cancellation of the tolling agreement and that appellant breached this agreement when she served her summons and complaint less than ten days after receiving notice of cancellation. As the remedy for this breach, the district court granted summary judgment dismissing appellant's remaining claims without prejudice. The district court did not cite any authority that indicates that the breach of a contract not to sue for a limited time period can be asserted as a defense to claims brought in breach of the contract, and we have not found any controlling authority that directly addresses this issue. But after examining related authority, we conclude that it cannot.

■ We have not found any case in which the Minnesota Supreme Court has considered the effect of entering into a covenant not to sue for a limited time period. But we have found cases that address covenants not to sue. Most recently, the supreme court explained that "[a] release or covenant not to sue is an agreement not to enforce an existing cause of action against the party to the agreement. The release is governed ... by rules of contract construction." *Karnes v. Quality Pork Processors*, 532 N.W.2d 560, 562 (Minn.1995). "A release is an affirmative defense to a cause of action, and the validity of a release is a matter for the [district] court." *Id.* at 563.

These statements might suggest that "release" and "covenant not to sue" are merely different names used to identify a single legal instrument and, therefore, that a covenant not to sue, like a release, is an affirmative defense to a cause of action. But in earlier cases, the supreme court explained that a release and a covenant not to sue are different types of instruments with different legal consequences.

> A release has been defined as a relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom it exists, to the person against whom it might have been enforced. A release may, dependent upon its terms, have the effect of extinguishing a right of action, and if so, it may be pleaded as a defense to any suit on the action. However, it is a well-established rule that a covenant not to sue does not constitute a satisfaction but merely an agreement not to enforce an existing cause of action against the party to the agreement....

*Gronquist v. Olson*, 242 Minn. 119, 125, 64 N.W.2d 159, 163–64 (1954) (citations omitted).

In a case that involved a plaintiff's covenant not to sue a joint tortfeasor, the supreme court explained:

> Where a person having a cause of action against two or more joint tortfeasors releases and discharges one of such tortfeasors, it is settled law that he

thereby releases and discharges all of them, as he had but a single cause of action and can have only one satisfaction thereof. But a covenant not to sue one or more of such joint tortfeasors does not impair or affect the right to sue the others. It is sometimes difficult to determine whether a particular instrument was intended as a release and discharge or as a covenant not to sue, but where by its terms it applies to only a part of the joint tortfeasors it is not construed as a release and discharge unless such is the plain import of the language used. Some courts even go to the extent of holding that an instrument which expressly releases and discharges some of the joint tortfeasors from all liability, but reserves or purports to reserve a right of action against the others, should be given effect as in substance a covenant not to sue, and as not intended to be a satisfaction and discharge of the cause of action.

*Joyce v. Mass. Real Estate Co.*, 173 Minn. 310, 312–13, 217 N.W. 337, 338 (1928) (citations omitted).

Under *Gronquist* and *Joyce,* appellant's agreement with respondents was not a release, because appellant did not give up her claims against respondents; she only agreed to temporarily refrain from bringing her cause of action. It is evident from the terms of the agreement that there was no intent to extinguish the cause of action and discharge respondents. Instead, the agreement reflects an intention to preserve the cause of action while the parties negotiated in an effort to avoid litigation.

The Minnesota Supreme Court has held that a plaintiff is barred from relief for matters within the scope of a covenant not

to sue. *Butler v. Butler Bros.*, 186 Minn. 144, 151–52, 242 N.W. 701, 704 (1932). But in *Butler,* the covenant not to sue was not an agreement to temporarily refrain from bringing a cause of action; it was an agreement to not institute any action against a corporation or its directors for acts and transactions that happened before a certain date. *Id.* at 147, 242 N.W. at 702. Because the agreement was to indefinitely forbear from instituting an action for certain acts and transactions, the effect of the agreement was to bar relief for those acts and transactions, and the agreement was, in effect, a release. This appears to be the principle that the supreme court was explaining when it said in *Gronquist* that "[a] release may, dependent upon its terms, have the effect of extinguishing a right of action, *and if so,* it may be pleaded as a defense to any suit on the action." [1] 242 Minn. at 125, 64 N.W.2d at 164 (emphasis added). But this reasoning does not directly apply when a covenant not to sue does not have the effect of extinguishing a right of action and, therefore, is not a release, because in that case, the right of action continues to exist even though bringing the action may violate the covenant not to sue.

One commentator has explained a basis for treating a covenant not to sue for a limited time period differently than a covenant not to sue at all.

> Sometimes an obligee does not manifest an intention to discharge an obligor, but merely makes a contract promising not to sue him or her.... In this connection, it has been said that a covenant not to sue is nothing but a contract, and should be so construed.

---

1. The supreme court stated this principle again in *Karnes* when it first stated that "[a] release or covenant not to sue is an agreement not to enforce an existing cause of action against the party to the agreement" and then stated that "[a] release is an affirmative defense to a cause of action." 532 N.W.2d at 562–63.

A covenant not to sue for a limited time does not suspend or affect in any other way the covenantor's right to sue, but the covenantee's only remedy is by an action for damages for breach of the covenant. However a covenant not to sue a debtor at all, or to forbear perpetually, is a bar to the original cause of action as against the particular debtor. This is to avoid circuity of action; for if the plaintiff in the original action were to recover, the defendant could recover precisely the same damages back for breach of the covenant to forbear or not to sue. Instead of permitting the double action, the court produces the same effect more simply by giving judgment for the defendant in the original action.

12 Richard A. Lord, *Williston on Contracts* § 36:16, at 677–78 (4th ed. 1999) (footnotes omitted) (citing *Mendenhall v. Lenwell*, 5 Blackf. 125 (Ind.1839) (stating that agreement not to sue for a limited time is no bar to an action brought before the expiration of the given time and that damages may be recovered for a breach, but the covenant cannot have the effect of a release)).

▮ The circuity of action that occurs when there is a covenant to perpetually forbear from bringing suit does not occur in the present case because appellant only agreed not to sue for a limited period. Consequently, a breach occurs when an action is brought early, not when any action is brought, and it is not necessarily the case that the damages to respondents caused by bringing the action early are precisely the same damages that appellant could recover in her underlying action. Because the damages in both actions are not the same, giving judgment to respondents in appellant's original action will not produce the same effect as permitting appellant's action to proceed and allowing respondents to recover damages in an action for breach of the tolling agreement.

Under the Restatement (Second) of Contracts, a covenant not to sue for a limited time period acts as a bar to a suit during the limited period. The restatement states:

(1) A contract not to sue is a contract under which the obligee of a duty promises never to sue the obligor or a third person to enforce the duty or not to do so for a limited time.

(2) Except as stated in Subsection (3), a contract never to sue discharges the duty and a contract not to sue for a limited time bars an action to enforce the duty during that time.

(3) A contract not to sue one co-obligor bars levy of execution on the property of the promisee during the agreed time but does not bar an action or the recovery of judgment against any co-obligor.

Restatement (Second) of Contracts § 285 (1979).

We see some merit in the straightforward principle that a party who contracts not to sue for a limited time is barred from bringing an action during that time. But because appellant only agreed to temporarily refrain from bringing her cause of action and did not give up her claims against respondents, we are not persuaded that her contract not to sue for a limited time period should be given the effect of a release and serve as a bar to appellant's action. Instead, respondents may pursue their available remedies to enforce their rights under the contract. Therefore, we reverse the judgment dismissing appellant's remaining claims and remand for further proceedings.

## III.

▮ By notice of review, respondent Wernecke challenges the denial of his re-

quest for attorney fees incurred in successfully defending against appellant's claims under the MHRA. Appellant voluntarily dismissed her MHRA claims. It is within the district court's discretion to determine an award of attorney fees under the MHRA. *Gillson v. State, Dept. of Natural Res.,* 492 N.W.2d 835, 843 (Minn.App. 1992), *review denied* (Minn. Jan. 28, 1993).

▮ In an action under the MHRA, a prevailing plaintiff ordinarily is to be awarded attorney fees in all but special circumstances. *Christianburg Garment Co. v. EEOC,* 434 U.S. 412, 416–17, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978); *see Anderson v. Hunter, Keith, Marshall & Co.,* 417 N.W.2d 619, 628 (Minn.1988) (adopting Title VII standard and procedure for awarding attorney fees). In *Sigurdson v. Isanti County,* 386 N.W.2d 715, 723 (Minn.1986), the supreme court set forth the standard for awarding attorney fees to a prevailing defendant under the MHRA. The supreme court explained in *Sigurdson* that

> [a]n obvious reason for enactment of subdivision 3 of section 363.14 [the attorney fee provision of the MHRA] was to encourage victims of discrimination to bring suit, particularly where the relief sought is not a large money judgment, and to make legal counsel available in these cases. Making awards of attorney fees equally available to prevailing defendants would likely produce the reverse of the intended effect. Victims with legitimate cases would be discouraged from filing suit, fearing that if they did not prevail, they might be liable for substantial attorney fees incurred by a defendant. Moreover, the typically substantial difference in resources between plaintiffs and defendants in employment discrimination cases supports the conclusion that awards of attorney fees should not be available to prevailing defendants

on the same basis as to prevailing plaintiffs. We hold, therefore, that a trial court may, in its discretion, award attorney fees to a prevailing defendant, pursuant to section 363.14, subd. 3, only upon a finding that the employee's action was frivolous, unreasonable, or without foundation, or was brought in bad faith.

*Id.*

When the supreme court made this statement in *Sigurdson,* Minn.Stat. § 363.14, subd. 3 (1984), provided that "[i]n any action or proceeding brought pursuant to this section the court, in its discretion, may allow the prevailing party, other than the department [of human rights], a reasonable attorney's fee as part of the costs." In 1992, the current attorney-fee provision was enacted, which states:

> In any action or proceeding brought pursuant to this section the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs. In any case brought by the department, the court shall order a respondent who is determined to have engaged in an unfair discriminatory practice to reimburse the department and the attorney general for all appropriate litigation and court costs expended ... unless payment of the costs would impose a financial hardship on the respondent.

Minn.Stat. § 363A.33, subd. 7 (2006).

Wernecke argues that it can be inferred from the current statute that if the legislature intended to protect defendants who are found liable for violating the MHRA from having to pay attorney fees to the department in cases of financial hardship, the legislature would also intend to protect individual, nonemployer defendants who prevail in an MHRA action. Therefore, Wernecke argues, the standard adopted in *Sigurdson* for awarding fees to a prevail-

ing employer-defendant should not apply to individual, nonemployer defendants, and he should be treated like a prevailing plaintiff.

But in making this argument, Wernecke uses a statutory provision that restricts attorney-fee awards against defendants who have violated the MHRA to argue that this court should lower the standard that a prevailing defendant must meet to obtain an attorney-fee award from an unsuccessful plaintiff. Although section 363A.33, subd. 7, reflects a legislative intent to restrict attorney-fee awards against defendants in cases of hardship, it does not follow that when it enacted the current statute, the legislature also intended to change the standard for awarding fees against a plaintiff.

As an alternative to applying to a prevailing defendant the same standard that applies to awarding attorney fees to a prevailing plaintiff, Wernecke argues that "given the *Sigurdson* Court's and the Minnesota legislature's emphasis on the disparate resources between plaintiffs and defendants in MHRA cases," this court should adopt a new standard for awarding attorney fees to prevailing nonemployer defendants that "require[s] trial courts to examine the resources available to the defendant in question in comparison with the amount of attorneys' fees and costs incurred in connection with obtaining the result." But Wernecke does not explain how a standard that considers only the defendant's resources reflects an emphasis on the disparate resources of plaintiffs and defendants. We are not persuaded that a new standard should be adopted for awarding attorney fees to prevailing nonemployer defendants.

█ Finally, Wernecke argues that even if the *Sigurdson* standard applies to his request for attorney fees, the district court erred in denying his request because

appellant's MHRA claims were unreasonable and without foundation and appellant could not reasonably have hoped to recover against Wernecke. But under *Sigurdson*, a district court that finds that a plaintiff's action was frivolous, unreasonable, without foundation, or brought in bad faith may, *in its discretion*, award attorney fees to a prevailing defendant. 386 N.W.2d at 723. Thus, even if a district court finds that a plaintiff's claims are unreasonable and without foundation, the district court still has discretion to determine whether to award fees. *See Bilal v. Northwest Airlines, Inc.*, 537 N.W.2d 614, 620 (Minn. 1995) (stating that finding that there is no legal authority for claim satisfies statutory requirement that plaintiff's action is without foundation, and court could have granted defendant's request for attorney fees, but court was within its discretion in denying fee request).

The district court explained its denial of Wernecke's attorney-fee request as follows:

In this case the MHRA claims of [appellant] were part of a much larger action that included several causes of action. Even though the MHRA claims were not voluntarily dismissed until immediately before the summary judgment hearing, any financial burden on ... Wernecke, relating to the MHRA claims, was mitigated by the fact that these claims were a part of the larger overall case, all of which was somewhat tied together. Additionally, the resources of the parties are such that to award attorney fees under the circumstances would controvert the public policy behind the MHRA.

This explanation demonstrates that in denying Wernecke's request for fees, the district court considered the resources of both the plaintiff and the defendant and that a reason for enacting the attorney-

fees provision of the MHRA was to encourage victims of discrimination to bring suit. The district court then exercised its discretion in light of these considerations and declined to award Wernecke fees. Wernecke has not demonstrated that the district court abused its discretion.

## DECISION

Because the contract to refrain from initiating a lawsuit for a limited time period is not a release of appellant's remaining claims, the district court erred in granting summary judgment for respondents dismissing the remaining claims. We reverse the summary judgment for respondents on the claims not voluntarily dismissed by appellant and remand for further proceedings. We affirm the district court's denial of attorney fees to Wernecke, and we deny respondents' motion to strike.

**Affirmed in part and reversed and remanded in part; motion denied.**