### Beha, et al. v. Martin, et al.

(Decided December 18, 1914.)

#### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Corporations—Election of Directors—What Constitutes—Evidence.
—Where the charter of a corporation authorized the election of certain directors, and at several annual meetings of stockholders, although no directors were formally elected as such, officers were elected who were only eligible as such because they were directors, and the minutes of the meeting recited that a general manager was appointed "with the approval of all the directors," held, that under such circumstances, the officers were as a matter of fact elected directors of the corporation.

2. Corporations—Contract With Directors—Rights of Stockholders.—
The right of a majority of the stockholders of a corporation either to originally direct or affirm a contract between the company and a director or directors personally interested in the contract is not absolute and unqualified, but is subject to the qualification that the affirmance or adoption must not be brought about

by unfair or improper means, and must not be illegal or fraudulent, or oppressive towards those stockholders who oppose it.

3. Corporations—Right of Majority of Stockholders to Deal With Assets.—The majority of the stockholders of a corporation, although they may deal with the assets of the company, cannot so deal with them as to divide the assets, more or less, between themselves to the exclusion of the minority.

4. Corporations—Services of Directors as Active Officers—Entitled to Compensation.—Directors of a corporation who are active officers are not required to donate their services to the corporation.

5. Corporations—Salaries Voted to Officers by Majority of Stockholders—Rights of Minority—Review by Court of Equity.—Where directors whc are majority stockholders of a corporation vote certain salaries to themselves as officers, equity will, upon application by the minority stockholders, review the reasonableness of the salaries so allowed, and where it appears that they are exorbitant or unreasonable, will afford adequate relief, by enjoining the payment of such salaries and adjudging a recovery of the excess over what is a reasonable salary.

6. Corporations—Compensation of Officers—Reasonableness—How Determined.—The question of the reasonableness of the compensation of officers of a corporation depends on what the services of a competent officer are reasonably worth, and not on what he could make in a different business.

7. Corporations—Compensation of Officers—Reasonableness—How Determined—Burden of Proof.—It does not devolve upon the officer or director whose compensation is in question to prove that the compensation is fair, but the objecting stockholder must establish affirmatively that the salary or compensation is unreasonable and oppressive.

8. Corporations—Right of Directors to Increase Own Salaries.— While directors may vote increased salaries to themselves where each one refrains from voting when the resolution affecting himself is voted on, yet no person can vote on his own case.

9. Corporations—Right of Directors to Fix Own Salaries—Evidence.— Where three stockholders, being a majority, voted salaries to themselves as officers and directors of the corporation, and the salaries of all three were fixed by one resolution, which was voted on by all of them, held, that each director voted in favor of fixing his own salary, and that the resolution was invalid.

G. A. ELLERKAMP and HENRY J. TILFORD for appellants.

GARTNER & VAUGHAN for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

In the year 1904 Albert S. Beha and his brother, Robert M. Beha, together with George H. Carter, a practical laundryman, organized the O. K. Laundry Company, with a capital stock of $2,500, divided into 100 shares of the

par value of $25 each. The corporation prospered from the beginning, and liberal dividends were declared. In the month of March, 1908, R. L. Martin, who had been engaged in driving a wagon for another laundry, was sold one share of stock in the company by Albert S. Beha at the price of $200. It was the policy of the company to have in its employ only men who were stockholders, and therefore personally interested in the success of the company. The share of stock was sold to Martin for the purpose of acquiring his services. Shortly after the purchase by Martin, William T. Tichenor, a workman in the laundry, was sold five shares of stock. In the year 1911 ten shares of stock were sold to John B. Stokes, who was also a practical laundryman. In the meantime Robert M. Beha and George H. Carter had retired from the company. Thereafter the stock in the company was owned by Albert S. Beha, Stokes, Tichenor and Martin, until October 5, 1912, when Martin, who had in the meantime acquired additional stock, sold five of his shares to W. H. Powell. On October 1, 1912, Martin was promoted from the position of driver to that of manager. There is considerable proof to the effect that Martin's management was not successful, and that complaints were frequently made of the poor character of the work turned out after he took charge. Albert Beha, acting in conjunction with the other directors and stockholders, informed Martin on March 15, 1913, that, in his opinion, a new manager should be installed, and requested Martin to take his old place on the wagon. Martin refused to do this, and quit the service of the company. After quitting the service of the company, Martin took employment with another company as driver. In this capacity he earned about $22 a week.

On August 2, 1913, a called meeting of the directors was held. There were present at this meeting Beha, Tichenor, Stokes and Martin. It was moved by Tichenor and seconded by Stokes that whereas on March 15, 1913, two of the active stockholders retired from the service of the company, the remaining active officers should receive the following salaries from date: Albert S. Beha, president, $100 a month; William T. Tichenor, vice-president, $25 a month; John P. Stokes, treasurer, $25 a month. On this resolution Beha, Tichenor and Stokes voted in the affirmative, while Martin voted in the negative. The resolution was declared carried. Shortly after the above action was taken, plaintiffs, R. L. Martin and W. H.

Powell, brought this action against Albert S. Beha, William T. Tichenor and John B. Stokes, and the O. K. Laundry Company, to enjoin the defendants from collecting the salaries voted them at the meeting above referred to, and to recover the sums which had been paid them pursuant to the action taken at that meeting. Plaintiffs were granted the relief prayed for, and defendants appeal.

In addition to the foregoing facts, it appears that no formal directors' meetings were ever held, and no directors as such were ever elected at the annual meeting of stockholders. Thus at the first meeting of the stockholders, held on January 18, 1904, the following officers were appointed to serve until the first Monday of February: President and Treasurer, Albert S. Beha; Secretary, Robert M. Beha; Vice-President, George H. Carter. On February 1, 1904, another regular annual meeting of stockholders was held, at which the same officers were elected for the ensuing year. At this meeting the minutes recite that Robert M. Beha was appointed general manager for the ensuing year "with the approval of all the directors." On February 6, 1905, the same officers were re-elected at the annual meeting of the stockholders, and Robert M. Beha again appointed general manager "with the approval of all the directors." At the next annual meetings of stockholders, held on February 5, 1906, February 4, 1907, February 3, 1908, and February 1, 1909, the same proceedings were had. At a meeting held August 23, 1909, R. L. Martin was elected Secretary, and William T. Tichenor, Vice-President, in the place of George H. Carter and Robert M. Beha, resigned. At the next annual meeting, held on February 7, 1910, the following officers were elected for the ensuing year: Albert S. Beha, President; William T. Tichenor, Vice-President; R. L. Martin, Secretary; Thomas H. Beha, Treasurer. "With the approval of all the directors," Thomas H. Beha was appointed general manager by the president. At the annual meeting of the stockholders, held on February 6, 1911, the following officers were elected: President, Albert S. Beha; Vice-President, William T. Tichenor; Secretary, R. L. Martin; Treasurer, John B. Stokes. At that meeting Robert M. Beha was appointed general manager "with the approval of all the directors." At the annual meeting held February 3, 1912, the following officers were elected: President, Albert S. Beha; Vice-President,

William T. Tichenor; Secretary, R. L. Martin; Treasurer, John B. Stokes. Robert M. Beha was re-appointed general manager. At the annual meeting held on February 1, 1913, the same officers were elected for the ensuing year.

The stock that Martin bought averaged him in the neighborhood of $100 a share, or four times the par value of the stock. At the time of the institution of the suit, the defendants, Beha, Tichenor and Stokes, owned a majority of the stock. For several years the dividends ranged from 20 to 44 per cent. The annual income from the plant was about $2,400. Deducting repairs, etc., there was available, after the payment of the $1,800 salary voted to the defendants, sufficient money to pay an annual dividend of about 10 per cent.

The charter and by-laws of the corporation are not in evidence. Albert S. Beha, the president, says that under its charter the corporation was authorized to have a board of from three to five directors. He further says that while the minutes of the stockholders' meetings do not show that any directors were elected as such, yet they intended to elect directors by electing officers who could only serve if as a matter of fact they were directors. It further appears from the minutes of several of the meetings that the president appointed the manager of the plant "with the consent of all the directors."

The chancellor's judgment proceeds upon the theory that the only reason assigned for the action of defendants in voting themselves salaries is that one of the plaintiffs had obtained employment with another corporation engaged in the same business, and that there was no real reason for voting the salaries except to absorb the earnings of the corporation instead of paying the usual dividends in which plaintiffs would share. Though, conceding that the president might be entitled to a small salary, the corporation was enjoined from paying him any salary whatever, and he was also required to pay back all the salary that he had received. It may be doubted if the judgment can be sustained for the reasons assigned by the chancellor. While it may be true that the minutes of the annual meetings do not show that the directors were elected as such, the evidence leaves no doubt that the stockholders, by electing officers of the corporation who were only eligible as such because they were directors, intended to and did elect the officers directors. That this is true is further shown by the

fact that the president immediately appointed a manager of the corporation "with the consent of all the directors." While it is true that the meetings of the stockholders were somewhat informal, and that the minutes of these meetings were not as full and accurate as they should have been, we conclude from a consideration of all the evidence that the defendants, as well as the previous officers of the corporation, were as a matter of fact elected directors of the corporation. It is evident from the judgment of the chancellor that he took the same view of the question. We shall, therefore, consider the case from the standpoint that defendants, together with plaintiff Martin, were, as a matter of fact, directors of the corporation. Not only so, but they owned practically all of the stock of the corporation. It follows, therefore, that the action of the directors was not invalid on the ground of the informality of the manner of their selection. It must also be remembered that this is not a case where the directors, without authority in the charter or by-laws or without the acquiesence of the stockholders, have voted themselves salaries for services merely as directors. It is a case where the directors are the ministerial officers of the corporation, and have voted themselves salaries for services as such officers. Ordinarily, of course, the directors, especially where they own a majority of the stock of the corporation, are invested with large powers in the matter of the selection of, and the salaries to be paid, officers of the corporation. With this broad discretion the courts will not ordinarily interfere. It is also the rule that in the absence of statutory or other provisions regulating the constitutional powers of the managing body, the majority of the stockholders must determine how its affairs are to be conducted, and to whom and under what restrictions the management of those affairs shall be entrusted. Lindl. Comp. (5th Ed.), 298. The right of a majority of the stockholders either to originally direct or affirm a contract between the company and a director or directors personally interested in the contract, is not, however, absolute and unqualified, but is subject to the qualification that the affirmance or adoption must not be brought about by unfair or improper means, and must not be illegal or fraudulent, or oppressive towards those stockholders who oppose it. North Western Transportation Co. v. Beatty, L. R., 12 App., 589 (Jud. Council, 1887). It is likewise well settled that the majority of

the stockholders, although they may deal with the assets
of the company, cannot so deal with them as to divide
the assets, more or less, between themselves, to the exclu-
sion of the minority. Meiner v. Hooper's Telegraph
Works, 9 Ch. App., 353. At the same time this rule does
not require that the directors who are active officers of
the corporation shall donate their services to the cor-
poration. The facts of this case illustrate the wisdom
of this rule. Here, for a number of years, all the officers
and employes of the corporation were both stockholders
and directors. So long as this condition continued, the
officers of the corporation who were entrusted with the
management of its affairs might have been willing to
give their services in consideration of the increased
dividends which they were to receive. Plaintiff, R. L.
Martin, however, severed his connection with the com-
pany and entered the employ of a rival company. We can
not say, under these circumstances, that the officers were
therefore required to give their services to the corpora-
tion for the purpose of increasing the dividends of Mar-
tin, who was receiving pay for his service from a rival
concern, or to increase the dividends of his co-plaintiff,
who was rendering no services for the corporation. In
such a case, however, a court of equity, on application by
the minority stockholders, will review the reasonable-
ness of the salaries allowed the corporate officers by the
directors, with the approval of the majority of the stock-
holders, and where it appears that the salaries allowed,
considering the nature and extent of the services
rendered, are exorbitant or unreasonable, will afford ade-
quate relief, by enjoining the payment of such salaries
and adjudging a recovery for the excess over what is a
reasonable salary. Lillard v. Oil, Paint & Drug Co.
(N. J.), 56 Atl., 254; Cook on Corporations, 6th Ed., Sec.
657; Jacobson v. Brooklyn Lumber Co., 184 N. Y., 152;
Von Armin v. American Tube Works, 188 Mass., 515.
The question of the reasonableness of the compensa-
tion of such an officer depends on what the services of a
competent officer are reasonably worth, and not on what
he could make in a different business. Lillard v. Oil,
Paint and Drug Co., *supra*. In a case like this, where
the compensation is fixed by the board of directors, who
also are a majority of the stockholders, it does not de-
volve upon the director whose compensation is in ques-
tion to prove that the compensation is fair, but the ob-
jecting stockholder must establish affirmatively that the

salary or compensation is unreasonable and oppressive. Lillard v. Oil, Paint & Drug Co., *supra.* In the case under consideration no evidence was heard on the question of the unreasonableness of the salaries involved. In the absence of such evidence, we are not prepared to say that the salaries voted the defendants are unreasonable and oppressive.

(2) While there is authority to the effect that directors may vote increased salaries to themselves as officers where each one refrains from voting when the resolution affecting himself, is voted on (McNab v. Mc.-Nab, &c. Co., 62 Hun., 18, 133 N. Y., 687), yet it is elementary that no person can vote on his own case. Nor can his vote be counted for the purpose of constituting a quorum. Shaffhauser v. Arnbolt & Schaefer, &c. Co. (Pa.), 67 Atl., 417; Copeland v. Johnson Mfg. Co., 47 Hun., 235.

In the case before us the salary of each officer was not fixed by a separate resolution. The three salaries were fixed by one resolution. Each of the defendants voted in favor of the resolution. In such a case the court will not separate the resolution into three distinct parts, and say that that part of the resolution providing a salary for each particular officer or director was carried by the votes of the other two, even if the other two constituted a majority of a quorum. In other words, there is no way of drawing the line of demarcation, and holding that no one of the directors voted in his own case, but that his salary was fixed by the votes of the other two. It is simply a case where each director voted in favor of a resolution fixing his own salary, and it is impossible to say that his act was invalid as to himself, but valid as to the other two. We therefore conclude that the action of the board in voting the salaries was invalid.

Judgment affirmed.