Louis BINZ, Individually and as a Share-
holder of St. Louis Hide and Tallow Com-
pany, a Corporation, Suing on Behalf of
Himself and All Other Shareholders, and
for the Benefit of the Corporation, (Plain-
tiff) Appellant,

v.

ST. LOUIS HIDE AND TALLOW COMPA-
NY, a Corporation, Albert J. Binz, Emma
Binz, Leo J. Wilkes, William Brynda, Wil-
liam J. Wingbermuehle and Jack M. Cron-
in, (Defendants) Respondents.

No. 31502.

St. Louis Court of Appeals.

Missouri.

April 21, 1964.

Robert S. Allen, Dominic Troiani, Lewis,
Rice, Tucker, Allen & Chubb, St. Louis, for
appellant.

Robert Mass, St. Louis, for St. Louis
Hide and Tallow Co. and William Brynda.

Dubinsky & Duggan, Jerome F. Duggan,
St. Louis, for Albert J. Binz, Emma Binz
and Leo J. Wilkes.

Pannell & Hess, Phillip G. Hess, Festus,
for William J. Wingbermuehle and Jack
Cronin.

FRANK D. CONNETT, Jr., Special
Judge.

This case arose from the following set
of facts: In 1952, plaintiff's mother, Marie
Binz, and defendants Albert J. Binz and
William Brynda purchased a St. Louis
rendering plant (Haefele Hide and Tallow
Company), now known as St. Louis Hide
and Tallow Company, the corporate defend-
ant, on whose behalf plaintiff instituted this
suit. The corporate defendant, St. Louis
Hide and Tallow Company, a Missouri cor-
poration, was in the business of buying
meat scraps, suet and bones, rendering the
same and selling the processed product,
namely, tallow. Marie Binz was a widow
and defendant Albert J. Binz was her
brother-in-law. Initially, the three of them,

Marie Binz, defendants Albert J. Binz and William Brynda, each held an equal stock interest in the corporate defendant. From the beginning, defendant Albert J. Binz was president, Marie Binz was vice-president, and defendant Brynda was secretary-treasurer. Although the articles provided for four members on the board of directors, the three of them served as directors from September 2, 1952, until October 28, 1958.

From the inception of this stock ownership, there was a restrictive agreement among the three stockholders requiring any of them desiring to dispose of his stock to first offer the same to the other parties.

About 1953, defendant Leo J. Wilkes became associated with the corporation as an accountant, and subsequently 100 shares of the corporation's stock were issued in his name, and he then became the fourth director. The 100 shares of stock were apparently his in name only and were under control of Albert J. Binz. In February, 1960, the by-laws were amended to provide that only a stockholder could be a director of the corporation. Thereafter, in the spring of 1961, Marie Binz complied with the restrictive stock agreements and ultimately, in July of 1961, transferred all of her stock in the corporation to plaintiff. On March 30, 1962, in violation of these stock entailing agreements, defendants Binz and Brynda gave options to defendants William J. Wingbermuehle and Jack M. Cronin for their 2500 shares. They also executed irrevocable proxies covering all of these shares to defendants Wingbermuehle and Cronin. So that Wingbermuehle and Cronin could qualify as directors, two shares of stock were transferred to them for $1.00 each. At the Board of Directors Meeting on April 6, 1962, defendant Brynda was elected president, defendant Wingbermuehle was elected vice-president, and defendant Cronin was elected secretary. Plaintiff, Louis Binz, was present as the fourth director. The board set the salary of defendant Brynda and then attempted to delegate to defendant Brynda the authority to fix the rest of the salaries by the following Resolution as shown by the minutes of the corporation:

## "MINUTES

"Thereupon, motion was made by Winbgermuehle that the new President, William, Brynda, should receive the same salary and other emoluments of office that were enjoyed by his predecessor Al Binz, as President of company. Motion was seconded; motion put by the Chair, the Chair declared the motion carried.

"Thereafter, William Wingbermuehle moved that the President, William Brynda, be empowered to set all other salaries and other financial matters for all other employees of the corporation.

"Motion was put by the Chair and declared carried."

Defendant Brynda set the salaries of defendants Wingbermuehle and Cronin at $6,000 per year for each of them. From the evidence presented, it appears that defendant Wingbermuehle devoted all of his time to defendant corporation and defendant Cronin a part of his time. Defendants Wingbermuehle and Cronin had previously been in business as partners operating a business known as Bill and Jack Tallow Company. In this business they purchased and picked up suet, meat scraps and bones from retail butchers, meat markets and groceries and sold the same to renderers. One of the renderers buying such raw products was this corporate defendant, St. Louis Hide and Tallow Company. After the purchase of the controlling interest of defendant corporation, they continued to operate the Bill and Jack Tallow Company with defendant Cronin spending most of his time in the interest of the partnership. The partnership became the sole supplier for defendant corporation at prices fixed by defendant Brynda and defendant Wingbermuehle.

The plaintiff, appellant, Louis Binz, brought this action against the St. Louis Hide and Tallow Company as a minority stockholder (1200 out of 3700 shares), on

behalf of himself and for the benefit of the corporation. First, he sought to enjoin transfers of stock in violation of the two stock entailing agreements restricting the transfer of the corporation's stock, and the removal of defendants Wingbermuehle and Cronin as directors and officers of the corporation. He also asked that defendants Wingbermuehle and Cronin be made to account to the corporation for allegedly excessive salaries and the sums paid to them by the corporation. A trial was held before the Honorable James F. Nangle, Judge of the Circuit Court of the City of St. Louis. The court sustained plaintiff's petition and held that Wingbermuehle and Cronin were not properly elected as directors and officers of the corporation and they were ordered to cease acting as such. However, the court found "that plaintiff did not prove that the salaries or other sums paid defendants Wingbermuehle and Cronin were unreasonable and, accordingly, said defendants do not have to account to the corporation for monies paid to them by the corporation."

The plaintiff appealed from the decision of the court below on this latter issue on the ground that the court had placed the burden of proof on the plaintiff to prove his allegation that these salaries paid to Wingbermuehle and Cronin were excessive. We believe such was the effect of the court's ruling. It is plaintiff's contention that the burden of proof should have been on defendants Wingbermuehle and Cronin to show that their salaries were reasonable. Any issue as to prices paid to the Bill and Jack Tallow Company for meat scraps, etc., by defendant corporation has been abandoned as only the salary question has been briefed.

Neither party was able to cite and the court was unable to find any Missouri case directly on the point. However, a study of the cases from other jurisdictions concerning suits of this nature convinces us that the law is as follows:

In suits by stockholders to recover for the corporation, salaries claimed to be excessive and paid to officers, who are also directors, and these officer directors have set their own salaries, or whose votes were necessary to set their own salaries, the burden is upon the director officers to justify their salaries and show the reasonableness thereof.

It appears that at one time there was the rule that acts of director officers in fixing their own salaries were void, and any director officer who voted for his own salary was entitled to no compensation. However, it appears that the modern rule is that such acts are only voidable and that in a suit by a minority stockholder to set aside a salary set by a self-dealing officer director, the officer director has an opportunity to prove that the salary set was reasonable and justified by the services performed. Yet it is clear that when it appears the salary was set by self-dealing, then the burden of proof in justifying this salary is upon the officer director.

In the case of Carr v. Kimball, 153 App. Div. 825, 139 N.Y.S. 253, at page 263, we find the following:

"There is another set of cases which, while fully sustaining the proposition that directors are trustees, incapable of contracting with themselves, and that such purported contracts are voidable at the suit of the corporation, or a minority stockholder suing in a representative capacity, nevertheless recognize a tendency in modern times towards the formation of those small business corporations, and, realizing that those most interested and holding practically all of the stock will in all probability become the directors and officers thereof, take the view that, while the contract is voidable, nevertheless the officer who has done the work by which the corporation has benefited is entitled to receive pay on the theory of quantum meruit. The rule is, however, that the burden is upon the director officer to show the fair and reasonable value of the services rendered."

In Davis v. Thomas A. Davis Company, 63 N.J.Eq. 572, 52 A. 717 (1902) at page 718, we find the following:

"It is entirely settled that, where directors of a corporation attempt to deal with themselves, their acts are the subject of judicial inquiry and supervision. Directors cannot fix the value of their own services to the corporation. Whenever they attempt to do so, and their action is challenged by a stockholder or other interested persons, the burden is upon them to show what they have done to merit payment; and the quantity of compensation to which they are entitled is to be graded, not by the sum voted, but by what they earn."

See also 27 A.L.R. 300, 44 A.L.R. 570, 5 Fletcher Corporations, Sec. 2113, page 492. The basis of this rule of law is found in the prohibition against a director engaging in self-dealing. This has always been the law in Missouri. Hill v. Rich Hill Coal Mining Company, (1895), 119 Mo. 9, 24 S.W. 223; Bennett v. St. Louis Car Roofing Co., (1885), 19 Mo.App. 349; R. T. Davis Mill Co. v. Bennett, (1890), 39 Mo.App. 460; Frankford Exchange Bank v. McCune, (1934), Mo.App., 72 S.W.2d 155; Johnson v. Duensing, (1960), Mo.App., 340 S.W.2d 758, 768.

The defendants cite Seitz v. Union Brass and Metal Mfg. Co., 152 Minn. 460, 189 N.W. 586, 27 A.L.R. 293, and Beha v. Martin, 161 Ky. 838, 171 S.W. 393, as authority for a contrary view. In the Seitz case, no officer participated in the fixing of his own salary, nor was his presence necessary to constitute a quorum of the board of directors. In the Beha v. Martin case, the statement that "the objecting stockholder must establish affirmatively that the salary or compensation is unreasonable and oppressive" (171 S.W. 1. c. 394) is obiter dictum. In that case the defendant, president of the corporation, had voted for his own salary, and the judgment was that he pay back the salary voted and the corporation was enjoined from paying him anything because his act in voting for his own salary made the action of the board invalid. Furthermore, the court cited Lillard v. Oil, Paint Drug Company, 70 N.J.Eq. 197, 56 A. 254, as its authority for its statement. That case does not hold that the objecting stockholders must establish affirmatively that the salary is unreasonable or oppressive in cases where the salary is set by the board of directors and is that of a member of the board and an officer of the corporation, and this officer director voted for his own salary. In fact it holds the opposite.

██ Defendants also take the position that plaintiff must show some detriment to the corporation before questioning the salaries paid to defendants Wingbermuehle and Cronin, and they point out that all of the evidence presented shows that defendant corporation has benefited by virtue of the services of defendants Wingbermuehle and Cronin. Actually whether or not the corporation suffered any detriment is the ultimate issue. Did the corporation pay more for the services of defendants Wingbermuehle and Cronin than they were reasonably worth? The issue of detriment has nothing to do with the question of who has the burden of proof. In cases where it is shown that corporate directors have engaged in self-dealing, the burden is upon the directors to justify their actions and to show that there was no detriment to the corporation. The Missouri cases cited above amply demonstrate that self-dealing by directors of corporations are suspect in Missouri regardless of any showing of detriment to the corporation.

██ Given this as a rule, the question then is whether defendants Wingbermuehle and Cronin come within the rule. Did they as directors and officers of the corporation (we are assuming them to be de facto officers and directors rather than mere interlopers) deal with themselves when the amount of their salaries was determined? Did they either directly or indirectly vote

for their own salaries? We hold that they did. They controlled 2500 of the 3700 shares of corporate stock. They were two of the four directors. Defendant Brynda had no authority to set any salaries without the votes of defendants Wingbermuehle and Cronin. The record shows defendants Wingbermuehle and Cronin did vote to give this authority to defendant Brynda. Having participated as directors in setting their own salaries, defendants Wingbermuehle and Cronin must now show that the salaries paid to them were justified by the work performed.

Wherefore, this case is remanded and the court below is directed to have defendants Wingbermuehle and Cronin account to it for the salaries received by them as officers of the corporation.

WOLFE, Acting P. J., and ANDERSON, J., concur.