Bermann *v.* Meth et al., Appellants.

Argued October 7, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Edward Goldberg,* with him *Samuel J. Pasquarelli,* and *Goldberg & Pasquarelli,* for appellants.

*John A. Metz, Jr.,* with him *A. A. Bluestone,* and *Metz, Cook, Hanna & Kelly,* for appellee.

OPINION BY MR. JUSTICE COHEN, November 11, 1969:

This is a derivative action brought by the owner of one-third of the shares of the McCloy Company alleging that Harry Meth, the company's president, received excessive salaries for the years 1960-67, inclusive.

Appellant, Meth, was a co-founder of the company which is engaged in the office furniture and supplies business and has been connected with it as an officer since 1915. Appellee's father was also a co-founder, and upon his death on December 26, 1959, she inherited a one-third interest.

The lower court found as fact that between January 1, 1960, and December 31, 1966, Meth received as

salary the following amounts: 1960—$21,200; 1961—$21,200; 1962—$21,465; 1963—$21,465; 1964—$21,870; 1965—$21,465; 1966—$21,465. From January 1, 1967, through May 31, 1967, Meth received $410 weekly, and from June 1, 1967, to October 9, 1967, the weekly payment was $300. It also found that during this period appellant and his son, Melvin Meth, were responsible for the administration of the business, including personnel work, advertising, buying, supervision of selling and the payment of bills. During these years, Meth (aged 73 in 1960) worked approximately fifty to sixty hours per week. In November, 1966, he became ill and did not work until February, 1967, after which time he worked a reduced day of approximately five hours.

The court below concluded that the salaries paid were excessive and constituted a waste of corporate assets. The basis of that finding seems to have been appellant's age and his ill health at the time of trial. It held that because appellant devoted less than half the time to the business as did the vice-president, Melvin Meth, that a fair and reasonable salary should be estimated on the basis of one-half the salary paid to Melvin Meth, whom it found assumed the responsibility of running the company. It then ordered one-third of the excess to be paid to appellee.

In actions alleging excessive compensation, the general rule is that "(A) salary must bear a reasonable relation to the officer's ability and to the quantity and quality of the services he renders." 19 Am. Jur. 2d, Corporations §1412 at 804-05 (1965); *Black v. Parker Manufacturing Co.*, 329 Mass. 105, 106 N.E. 2d 544 (1952). There is no generally accepted rule, however, as to which party has the burden of proof on the question of reasonableness.

"(I)n an action by a minority stockholder questioning the compensation voted by the directors to an of-

ficer, the burden of proof to establish that the salary paid was unreasonable is on the plaintiff, though in an action against directors or other officers to recover money received or retained by them as salary or compensation, the burden of showing the value of their services is on the defendants." Fletcher Cyc. Corp. §2181 at 695-96 (1967). See also *Binz v. St. Louis Hide and Tallow Co.,* 378 S.W. 2d 228 (Mo. App. 1964); *Riddle v. Mary A. Riddle Co.,* 142 N.J. Eq. 147, 59 A. 2d 599 (1948). On the other hand, there is authority that: "The burden of proving the facts necessary to establish his cause of action rests on plaintiff regardless of whether the action is by an officer or director to recover compensation or whether it is to enjoin or recover back a payment of compensation to him." 19 C.J.S. Corporations, §810(c) at 209 (1940). This Court has not previously ruled on this specific question (which is a difficult one), and we need not do so now for even if we assume the burden is on appellant, he has met it.

Before examining the testimony as to the reasonableness of appellant's salary, it is necessary to construct the framework within which that testimony will be judged. Actions alleging excessive compensation always present great difficulties to the courts because it is almost impossible to assign a dollar figure to an individual's worth to a company. There is a great temptation to look only to objective factors because they help create some certainty for this area of the law. Thus, it appears that the court below relied on appellant's age (73 to 80 through the period in question), his ill health from 1966-67, and the reduced number of hours he worked after February, 1967.

While we would like to be able to rely on factors such as age and hours worked alone, we recognize that intangible factors must be evaluated also.

"To come within the rule of reason the compensation must be in proportion to the executive's ability, services and time devoted to the company, difficulties involved, responsibilities assumed, success achieved, amounts under jurisdiction, corporation earnings, profits and prosperity, increase in volume or quality of business or both, and all other relevant facts and circumstances." Fletcher Cyc. Corp. §1110 at 742 (1965). Therefore, it is necessary to examine the entire period in question (and not just the last year as the court below apparently did) and attempt to evaluate the quality as well as the quantity of the services given to the corporation by appellant.

The testimony of Melvin Meth, called by the appellee as of cross-examination, indicates that appellant had over fifty years experience in his field and was looked up to by associates and competitors as an expert. From 1960 to November, 1966, Harry Meth was in good health and worked fifty to sixty hours per week. He and Melvin Meth assumed the responsibilities that appellee's father had carried prior to his death, and in no year after his death did the company pay more for officers' salaries than it had in 1959. In 1967 this difference was $12,000 ($42,000 as against $54,000). Evidence introduced by appellant shows that during the 1957-67 period, net sales increased from $584,735 to $729,700, net earnings after taxes from $6919 to $24,361 and earnings per share from $11.09 to $39.04. It is clear that over this period, taken as a whole, the company achieved substantial growth. The testimony indicates that until 1964 or 1965 Harry Meth carried a greater burden than did Melvin Meth, and that after that, they shared it equally. Appellant has thus shown (at least by results) that for this period his services were valuable both as to quantity and quality, and appellee has introduced no evidence in rebuttal to indicate the contrary. Therefore, this Court

concludes that the salaries paid from 1960 to November, 1966, were reasonable.

As to the period appellant was ill, November, 1966, to February, 1967, we also conclude that the salary payments were reasonable. As a business practice, a company can derive great benefits from the payment of salaries to ill employees. This can help attract new employees and improve the morale of those already at work.

"There is nothing wrong in a board of directors granting temporary leave for the cause of illness to a valuable employee of long service. Both of these men had served the enterprise in important positions for considerably more than thirty years and had contributed greatly to its growth and success. They merited that consideration and treatment which the world over is exhibited by enlightened employers towards old employees stricken with illness. Their disposition has not been shown to be of any permanent nature, and the matter of paying them during their period of convalescence was a matter of policy resting in the honest judgment of the board of directors." *Solimine v. Hollander,* 128 N.J. Eq. 228, 16 A. 2d 203, 245-6 (1940). This Court will not interfere with such a decision unless the board has abused its discretion, and there is no evidence of such abuse here.

Finally, as to the period from February-October, 1967, appellant's evidence indicates that the quality of work done was as high as it had been before. Appellee has introduced no evidence in rebuttal, and we find the factors of age (80) and shortened work day (five hours) insufficient in and of themselves to require a finding of excessive compensation.

We conclude that the court below erred in finding that appellant's salaries were excessive and constituted a waste of corporate assets.

Decree reversed. Costs on the corporate appellant.